HENRIK K. CARLSEN, PLAINTIFF-APPELLANT, v. MAS-
TERS, MATES & PILOTS PENSION PLAN TRUST AND
THE INTERNATIONAL ORGANIZATION OF MASTERS,
MATES AND PILOTS, A LABOR UNION DOING BUSI-
NESS IN NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued March 20, 1979—Decided June 19, 1979.

*Mr. Seymour Feingold* argued the cause for appellant (*Messrs. Kaplan, Feingold* and *Kaplan*, attorneys).

*Mr. John J. Bracken* argued the cause for respondents.

The opinion of the court was delivered by

HANDLER, J. This case arises from the denial by the defendants union and union pension fund of a retirement pension claimed by plaintiff, Henrik K. Carlsen. The appeal, coming before the Court on motions for summary judgment, raises a number of questions concerning the proper interpretation and validity of certain of the pension fund's regulations. The determinative issue, however, is whether the defendants should be equitably estopped by their conduct from asserting that plaintiff had forfeited accumulated pension credits and thereby lost his pension.

I

The record furnishes a sufficient evidential foundation to draw this rather uncomplicated factual picture. From 1943 to 1963 plaintiff, Carlsen, was employed as a ship's captain by Isbrantsen Lines. In February 1945 plaintiff became a member of the defendant union, International Organization of Masters, Mates and Pilots, to which he began paying dues. In 1955 plaintiff also became a participant in the union's pension plan administered by defendant, Masters, Mates and Pilots Pension Plan Trust. This pension plan was, and is, funded wholly by employer contributions. Plaintiff continued, through the defendant union, to work as a ship's captain, accumulating pension credits for each year until 1963. In that year plaintiff's employer merged with another line. The successor employer had a collective bargaining agreement with a different labor union which had its own pension system, also funded entirely by employer contributions. Carlsen under these circumstances joined the new union and its pension plan; at this time he ceased to pay dues to the defendant union.

As of December 6, 1963, the year in which this shift occurred, Carlsen had accumulated 18-3/4 years of vested pension credits. This was certified by the pension fund's trustees in a letter of December 10 sent by the administrator of the pension fund. That letter further stated that in order for Carlsen to maintain his vesting rights "he must be a member of the [Union] Organization during any period he works in a deck officer capacity on any vessel whatsoever"; also, if he did not work in such a capacity, plaintiff would have the option of remaining a member of or withdrawing from the union.

In 1965 plaintiff first applied for an early retirement pension. In a letter dated November 19, 1965 the pension fund informed Carlsen that he was not then eligible for such a pension but that he would be eligible when he had accumulated 20 years of credit or had reached the age of 60. At that time plaintiff was only 51 years of age. Significantly there was no reference either to the possibility that the pension credits which plaintiff had already accumulated — only one year and four months shy of the 20 years minimum — would be forfeited or, alternatively, to the possibility that these past service credits might not be recognized because of a discontinuance of union membership before plaintiff's reaching the minimum retirement age of 60.

On September 9, 1970 Carlsen, fearing he may have jeopardized his pension by his failure to pay dues, sought reinstatement in the defendant union. The union accepted plaintiff's reinstatement application and required him to pay a $2,000 reinstatement fee, which he did. This fee was greater in amount than all of plaintiff's unpaid dues from 1963. Carlsen also paid both local and international union dues and continued to pay such dues until 1976, although he worked under the collective bargaining agreement of a different union. At no time, either upon rejoining defendant union or during the succeeding period in which he paid his dues regularly, was plaintiff advised that his membership did not suffice to maintain his vested rights in

the pension plan. Pointedly, he was never informed that his previous break in membership would have any consequence adverse to the pension credits he had previously acquired.

On March 11, 1976, at age 62, plaintiff again applied for an early retirement pension. Again, plaintiff was denied a pension. In this instance, however, the trustees of the pension fund denied Carlsen's application on the basis that his previously earned credits had been forfeited under the terms of the pension agreement and regulations. These regulations, accepting defendants' characterization of their legal effect, essentially provided that an employee with at least 15 years of pension credits would not forfeit such credits if he either was working in "covered employment" or remained "available" for work in such employment. "Covered employment" meant, according to the regulations, employment for which an employer was obligated to contribute to the pension plan. While the regulations provided that an employee could not be considered "available" during any period in which he worked aboard a vessel not covered by a collective bargaining agreement with defendant union, they further specified that continuance of union membership would be deemed satisfactory evidence of availability for work in covered employment. Defendants took the position that under these regulations plaintiff was not working in covered employment nor was he available for such work because he had ceased for a period of time to be a union member upon his failure to pay dues.

After denial of his pension and the exhaustion of his internal administrative remedies, plaintiff brought suit in the Superior Court, Law Division. Defendants filed a motion for summary judgment and plaintiff responded with a cross-motion. By letter decision the lower court granted summary judgment in favor of defendants. The result did not change on rehearing and the Appellate Division affirmed *per curiam*. This Court granted certification. 79 *N. J.* 463 (1978). We now reverse on the ground that the application of the doctrine of equitable estoppel, under the circumstances pre-

sented, precludes defendants from denying plaintiff's pension claims.

## II

Equitable estoppel has been defined as:

> * * * the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed * * * as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse * * *.
>
> [*Highway Trailer Co. v. Donna Motor Lines, Inc.,* 46 *N. J.* 442, 449, cert. den. *sub nom. Mount Vernon Fire Insurance Co. v. Highway Trailer Co.,* 385 *U. S.* 834, 87 *S. Ct.* 77, 17 *L. Ed.* 2d 68 (1966), quoting 3 *Pomeroy's Equity Jurisprudence* § 804 (5th ed. 1941)].

Conduct amounting to a misrepresentation or concealment of material facts, known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse gives rise to an equitable estoppel. See *e. g., Fidelity Union Trust Co. v. Essex County, etc., Co.,* 130 *N. J. Eq.* 351, 353 (E. & A. 141); *Clark v. Judge,* 84 *N. J. Super.* 35, 54 (Ch. Div. 1964), aff'd 44 *N. J.* 550 (1965). It is a doctrine designed to prevent a party's disavowal of previous conduct if such repudiation "would not be responsive to the demands of justice and good conscience". *West Jersey Title, etc. Co. v. Industrial Trust Co.,* 27 *N. J.* 144, 153 (1958); *N. J. Suburban Water Co. v. Harrison,* 122 *N. J. L.* 189, 194 (E. & A. 1938); see also *Summer Cottagers' Ass'n of Cape May v. City of Cape May,* 19 *N. J.* 493 (1955). In the instant case, the defendants acted in such a manner as to make it unjust to allow them to now assert that plaintiff forfeited his vested pension rights.

The defendant union and pension trust handled matters in a way which would lead plaintiff to believe that by paying a reinstatement fee and subsequent dues he would protect his pension rights. As already mentioned, when plaintiff became concerned in 1970 that he may have jeopardized his union pension by his failure to pay union dues, he sought reinstatement in the defendant union. The union allowed plaintiff to be reinstated, and, moreover, required him to pay a $2,000 reinstatement fee. Further, the union accepted plaintiff's regular dues payments over the next six years. At the time Carlsen sought reinstatement, he was working for an employer which had a collective bargaining agreement with a different union. Carlsen apparently realized that he was not then, nor, for the past seven years since 1963, had he been working in "covered employment" which would have served to continue his pension rights with defendant union. Hence, to repeat, the main reason for Carlsen to rejoin his former union by reinstatement would be to revive his past membership in order to be deemed "available for work in covered employment" under the pension regulations and to assure his pension position.

The contention by defendant union that there may have been some other, unspecific reason for Carlsen's wanting to join the union, notwithstanding his then current status as a member of another union, is unimpressive. Carlsen disclaims any other purpose and, even if there were some additional advantage to be gained, it in no way displaces as the dominant reason for reinstatement Carlsen's need to preserve his pension status through membership in the defendant union.

Defendants cannot disavow joint responsibility for plaintiff's predicament. Both participated in creating his legal quandary. The union cannot point the accusing finger at the pension trust for all of the misrepresentations which caused plaintiff's dilemma; nor can the pension trust disassociate itself from the union by attempting to separate pension rights from union rights. The two defendants are tightly connected. The pension system was created by the

union, union representatives serve as trustees of the pension fund, pension privileges are a union benefit, the union certifies eligibility for membership in the pension plan and both entities are benefited by the circumstance that the pension plan is funded entirely by employer contributions. There being joint participation, neither defendant can escape the onus for the legal consequences ostensibly engendered by the conduct of the other as far as the plaintiff is concerned.

 It is clear that plaintiff was not fully apprised of his pension rights by either defendant. Estoppel may arise by silence or omission where one is under a duty to speak or act. *E. g., Summer Cottagers' Ass'n of Cape May v. City of Cape May, supra.* Trustees of a pension fund are fiduciaries of the potential beneficiaries of that fund. *Hurd v. Hutnik,* 419 *F. Supp.* 630, 655 (D. N. J. 1976) ; *Thompson v. Sheet Metal Workers Union #13,* 132 *N. J. Super.* 348, 355 (Ch. Div. 1975). As such, the trustees, as well as the union officials who shared some responsibility for the union's pension plan, had an affirmative obligation to make full disclosures of all facts within their knowledge material to the beneficiary for the protection of his interests. See *Branch et al. v. White et al.,* 99 *N. J. Super.* 295 (App. Div.), certif. den. 51 *N. J.* 464 (1968) ; *Shallcross Express v. Local 478 Pension Fund,* 119 *N. J. Super.* 196 (Law Div. 1972).

This duty of complete disclosure encompasses not only objectively ascertainable facts bearing materially upon plaintiff's rights but also defendants' legal position with respect to those facts and their effect upon plaintiff's claims. If it was defendants' legal stance, right or wrong, that plaintiff would forfeit his vested pension credits unless he maintained continuous union membership at least until he became eligible for retirement, that position should have been disclosed explicitly and unmistakably. *Cf. Wells v. Wilbur B. Driver Co.,* 121 *N. J. Super.* 185 (Law Div. 1972). Not only did defendants fail to mention this when plaintiff sought reinstatement, but earlier, in 1965, they had informed plaintiff only that he would be eligible for a pension when he had

accumulated 20 years of pension credits or attained the age of 60 — this, even though plaintiff had already interrupted his membership and ceased paying dues two years prior thereto. By the same token, defendants should have informed plaintiff in 1963 that it was their position that he was required to maintain unbroken membership in the union and to continue to pay dues in order to preserve his rights to a pension. This they failed to do.

Defendants had an affirmative obligation to impart to plaintiff a clear and accurate picture of his rights and obligations. Plaintiff's reliance on defendants' advice, impliedly including their silence on the critical issue of continuous union membership, fully justified his belief that he was adequately protecting his pension by paying the reinstatement fee and subsequent dues. The defendants' significant omissions in the information disclosed caused plaintiff to change his position for the worse. The doctrine of equitable estoppel is available to rectify this kind of injustice. Hence, defendants are estopped from denying that plaintiff's reinstatement in the union and continued membership thereafter served to revive his past membership status for pension purposes and preserve the pension credits previously accrued.

Accordingly the judgment of the Appellate Division is reversed and the case is remanded for entry of summary judgment in favor of plaintiff.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, JACOBS, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.