226 N.J. Super. 367 (1988)
544 A.2d 423
W.V. PANGBORNE & CO., INC., PLAINTIFF-RESPONDENT,
v.
NEW JERSEY DEPARTMENT OF TRANSPORTATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 23, 1988.
Decided July 13, 1988.
*369 Before Judges KING, GAULKIN and GRUCCIO.
Nickolas F. Monteforte, Deputy Attorney General, argued the cause for defendant-appellant (W. Cary Edwards, Attorney General of New Jersey, attorney; James J. Ciancia, Assistant Attorney General, of counsel; Anne Marie Kelly, Deputy Attorney General, on the brief).
*370 Edward M. Callahan, Jr., argued the cause for plaintiff-respondent (Clancy, Callahan & Smith, attorneys; James J. Cronin, on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This is an appeal by leave granted, R. 2:2-3(b), by defendant, New Jersey Department of Transportation (DOT), from an order denying its motion for summary judgment. The issues are (1) whether the doctrine of equitable estoppel was properly invoked to enlarge the period of limitations for filing suit under the Contractual Liability Act, N.J.S.A. 59:13-1 to 10, and (2) when is a project "complete" within the terms of the standard DOT construction contract.
The plaintiff, W.V. Pangborne & Co., Inc. (Pangborne), is a licensed electrical contractor. DOT was the owner of a construction project known as the "Erie Lackawanna Electrification Conversion Extension and Rehabilitation, New Providence to Gladstone line work" (Erie). Pangborne filed suit against DOT seeking damages for cost overruns in connection with work performed on the Erie project.
In 1980, DOT solicited bids for the extension and rehabilitation of Erie. DOT made available to all bidders information on subsurface conditions and other specifications. On October 6, 1980 Pangborne submitted a bid on a portion of the construction project which was accepted as the low bid.
On November 19, 1980 DOT contracted with Pangborne to furnish all labor and materials necessary for the project and all allied works required in accordance with the plans and specifications. The contract included the standard contract terms employed in construction projects with DOT.
The contract's official starting date was December 19, 1980. The work did not actually start until February 18, 1981. Early in the project, Pangborne began to encounter subsurface conditions not described in the original specifications or otherwise *371 contemplated by the parties. Pangborne submitted change orders requesting additional compensation. The requests were reviewed by the DOT and denied on November 17, 1983. The denial letter stated:
If W.V. Pangborne and Co., Inc. wishes to pursue this claim any further, they may do so by submitting the claim in accordance with N.J.A.C. 16:33.2-1 through 2.8.[1]
On July 3, 1985 Pangborne submitted a claim pursuant to N.J.A.C. 16:33-2.5. Processing of the claim was protracted; documentation was requested and supplied over a period of 15 months. During that time DOT forwarded Pangborne a release form for the contract balance. Pangborne executed the release on July 25, 1985. On August 14, 1985 DOT notified Pangborne that the July 25, 1985 document contained an unqualified final release:
We have, however, previously received a claim for subsurface rock and a steel supplier claim. We must assume that the claim has been withdrawn or the unqualified release has been submitted in error.
Pangborne executed a new release which expressly reserved its claims pending final review. On December 20, 1985 the State accepted Pangborne's qualified release and tendered final payment. Pangborne received the payment on January 13, 1986 and cashed the check no later than January 22, 1986.
Pangborne was notified on October 22, 1986 that its reserved claims were denied by DOT. Pangborne then filed suit seeking damages for cost overruns on April 8, 1987. DOT made a motion for summary judgment based on the expiration of the period of limitations. The time-bar under the Contractual Liability Act is "2 years of the accrual of his claims or within 1 year after completion of the contract giving rise to paid claim, whichever may be later." N.J.S.A. 59:13-5. The parties agree *372 that Pangborne's claims accrued more than two years before suit was filed. DOT contended that the contract was complete as of January 1986, when the project was accepted and the conditional final payment made. Pangborne claimed that the contract was not complete until January 1987, when the one-year surety agreement expired.
The Law Division judge held that DOT was estopped from asserting the statute of limitations, N.J.S.A. 59:13-5, as a defense to Pangborne's claim. He found that the case called for the invocation of the doctrine of equitable estoppel for the following reasons: (1) the length of time that elapsed during administrative review of Pangborne's claim  15 months, (2) the good faith of both parties in attempting to come to a final resolution of the claim, and (3) DOT brought to Pangborne's attention the fact that the claim was outstanding when Pangborne signed the initial final release. The judge stated that "[t]he conduct of DOT reasonably led Pangborne to believe that it had one-year's time from notification of the rejection to file suit and not less than three months." As noted, the issues on appeal are (1) whether the doctrine of equitable estoppel may be invoked to extend the period of limitations for filing suit under the Contractual Liability Act and (2) when is a project "complete" under the standard DOT construction contract.
The doctrine of equitable estoppel is designed to prevent a party's disavowal of previous conduct if such repudiation would not be responsive to the demands of justice and good conscience. Carlsen v. Masters, Mates and Pilots Pension Plan Trust, 80 N.J. 334 (1979). The essential principle of the policy of "estoppel in pais" is that one may be precluded by his voluntary conduct from taking a course of action which would work injustice and wrong to the party relying with good reason and in good faith on such conduct. See Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503 (1955). The principle of estoppel does not receive the same generosity of application against public entities as against *373 private persons. Id., 19 N.J. 493 (1955). There is a general reluctance to apply estoppel against governmental agencies. O'Malley v. Dept. of Energy, 109 N.J. 309, 316 (1987) ("Equitable estoppel is rarely invoked against a government agency."); Boyd v. Dept. of Inst. and Agencies, 126 N.J. Super. 273 (App.Div. 1974).
Liability under contracts entered into by the State is controlled by the Contractual Liability Act, N.J.S.A. 59:13-1 to 10. The provisions of the Contractual Liability Act are generally consistent with the provisions of the Tort Claims Act and the two acts are often addressed together. See DeMendoza v. N.J. Transit Bus Operations, Inc., 194 N.J. Super. 607 (Law Div. 1984); cf. N.J.S.A. 59:1-4.[2] The Tort Claims Act does not prohibit the application of the doctrine of estoppel. Anske v. Borough of Palisades Park, 139 N.J. Super. 342 (App.Div. 1976). Both parties base their arguments on case law pertaining to notice requirements under the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3.
The issue here is not Pangborne's failure to give proper notice of a claim; the issue is Pangborne's failure to file suit within the period of limitations in the Contractual Liability Act. The notice provisions of the Tort Claims Act, including those relating to when an action may be commenced after notice of claim is filed, do not affect the period of limitations provisions. Anaya v. Vernon Tp., 139 N.J. Super. 409 (App. Div. 1976). The statute of limitations in the Contractual Liability Act, N.J.S.A. 59:13-5, is plainly mandatory. The Act says that in all contract claims against the State, the claimant shall be forever barred "if he fails to file within two years of accrual of the claim or one year after completion of the contract." We *374 need not determine here whether the court may be barred in all circumstances from invoking the doctrine of estoppel but in this situation the equities do not justify applying the doctrine.
Frapaul Const. Co. Inc. v. Transportation, Dep't. of N.J., 175 N.J. Super. 84 (App.Div. 1980), addressed the relationship between the filing of a notice of claim and the running of the period of limitations. Frapaul held that the Contractual Liability Act provides for a period of time in which consideration and decision on a claim may be made before the State is subject to suit, but the agency determination is not a prerequisite to the right to sue the State. A contractor is free, 90 days after submitting his claim, to institute an action under the contract, whether or not the agency has finished processing the claim.
The Tort Claims Act is largely patterned upon the California Tort Claims Act, Cal. Gov't. Code § 810 et seq. California has a state contract act which essentially serves the same purpose as our Contractual Liability Act. The California State Contract Act is narrower than the New Jersey Contractual Liability Act in that it requires contractors to first arbitrate any claims. The six-month period of limitations is then measured from the date of the determination of the parties' rights by the arbitrator. New Jersey has not adopted such a policy.
There is no extant legislative history pertaining to the Contractual Liability Act. No committee hearings were held. The Attorney General's Task Force's Comment attached to the Act stated in full
This bill waives the State's traditional sovereign immunity from suit in contract. The New Jersey Supreme Court has held that the defense of sovereign immunity is no longer available to the State in contract actions. P.T. & L. Construction Co. v. Commissioner, Department of Transportation, State of New Jersey, 55 N.J. 341 (1970). This position is in accord with the view of the great majority of states and with that of the Federal Government which have already subjected themselves to liability in contract matters. In fact, the New Jersey Supreme Court has held on March 20, 1972 that unless the Legislature designates a different tribunal, all claims based upon expressed contracts shall be adjudicated through the regular court system. P.T. & L. Construction Co. v. Commissioner, Department of Transportation, State of New Jersey, 60 N.J. 308 (1972).

*375 The bill provides that all contract claims shall be heard within the existing court system by judges sitting without a jury. The strict notice and filing requirements contained in section 5 are intended to encourage all parties contracting with the State to notify the State as soon as possible of any existing or potential claims. At the same time these requirements provide a sufficient period of time within which the appropriate State agency and the Attorney General may take administrative action to adjust the dispute.
While this legislation is primarily intended to treat the State similarly to private individuals and corporations in matters arising out of contract, it is nonetheless provided that the State should not be subjected to liability on the basis of a contract implied at law, for breach of warranty or for punitive or consequential damages since the nature and extent of such liability and damages could expose the State to unforeseen risks.
Section 10 of this chapter is intended to permit suit on any claims which accrued prior to the effective date of this chapter and which are not barred by the general 6-year statute of limitations to be filed in a court of competent jurisdiction provided that such filing occurs within 6 months of the effective date of this chapter. [Comment N.J.S.A. 59:13-10.]
Clearly, in matters of express contract and contracts implied-in-fact, the State made its liability co-extensive with that of private parties. The Legislature did provide however that "there shall be no recovery against the State for punitive or consequential damages arising out of contract nor shall there be any recovery against the State for claims based upon contracts implied in law [N.J.S.A. 59:13-3]," because such exposure was less predictable.
Plaintiff could have filed suit at the close of the 90-day consideration period and requested that the court place the case on inactive status pending the disposition of the administrative review. R. 1:13-7; R. 4:37. Resolution of this case on an equitable estoppel theory would be inconsistent with the language and purpose of the Contractual Liability Act. Nothing DOT did here misled the plaintiff to its detriment.
The dispute thus becomes one of contract interpretation  when was the contract completed and was the completion date more than one year before the date the complaint was filed. The contract itself defines "completed" as follows:
When all the work included in this Contract has been accepted by the Commissioner and the final or a conditional final certificate has been paid, the Project shall be considered as completed, and the Contractor shall be released *376 from all further obligations and requirements, except as set forth and provided in Art. 1.5.8 and 1.8.7 and as provided in Art. 1.8.5 regarding reimbursement to the State of any overpayment to the Contractor on a conditional final certificate. [Emphasis added.]
According to the contract, the contractor must notify the engineer when the project has been physically completed. The engineer then advises the contractor of any defects to be remedied before final acceptance is made. The final inspection and acceptance is made by the Commissioner when the project has been completed. Then a final or conditional final certificate is issued and the contractor is required to furnish a one-year surety bond. Completion of the project rests on two events: (1) acceptance of the work and (2) the issuance of a final or a conditional final certificate.
DOT claims that the contract was completed when the Commissioner accepted the work and issued the conditional final payment. Pangborne claims that the contract was completed exactly one year later. Pangborne relies upon the contractual requirement that a surety bond remain in effect for one year from the date of the acceptance of the project. But this guaranty period began after acceptance. Both parties agree that all actual performance under the contract, except the surety's guarantee, was complete no later than January 1986. At that time final payment was made by DOT. Any further obligations under the contract were guarantees under the surety bond. Thus, DOT issued a conditional final certificate at that time preserving Pangborne's right to assert a claim. Pangborne, of course, was aware of the pendency of the claim and the fact it was under review by the claims committee when the contract by definition was completed. We conclude that because the work on the contract was completed more than one year before suit was filed the claim is barred by N.J.S.A. 59:13-5. When the claims committee denied Pangborne's claim, three months still remained in the one-year limitations period; suit should have been filed during this period or before. The period of limitations as precisely expressed by the Legislature *377 in the Contractual Liability Act is not subject to judicial expansion under the principles of equitable estoppel in this situation.
Reversed.
NOTES
[1] N.J.A.C. 16:33-2.8 provides:

If the disposition of the claim is not acceptable to the contractor, the Regional Supervising Construction Engineer or the District Construction Engineer shall inform the contractor of his right to pursue his claim with the Legislative Appropriations Committee (Claims Subcommittee).
[2] N.J.S.A. 59:1-4 Effect upon liability based on contract or right to relief other than damages.

Nothing in this act shall affect liability based on contract or the right to obtain relief other than damages against the public entity or one of its employees.