260 N.J. Super. 50 (1992)
615 A.2d 266
NORMA CHRISOMALIS, PLAINTIFF-APPELLANT,
v.
LOUIS CHRISOMALIS AND STEPHEN CHRISOMALIS, INDIVIDUALLY AND AS CO-EXECUTORS OF THE ESTATE OF ANDREW CHRISOMALIS, THE LAW OFFICES OF EICHENBAUM, KANTROWITZ, LEFF & GULKO, AND DAVID LEFF, ESQ., DEFENDANTS-RESPONDENTS. AND LOUIS CHRISOMALIS & STEPHEN CHRISOMALIS, THIRD-PARTY PLAINTIFFS,
v.
WILLIAM HAZLEY, JOSEPH HAZLEY, AND DONALD HAZLEY, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 1992.
Decided October 27, 1992.
*51 Before Judges MICHELS, BAIME and WALLACE.
Ruvoldt & Ruvoldt, attorneys for appellant Norma Chrisomalis (Richard C. Heubel, of counsel and on the brief).
Ambrosio, Kyreakakis & DiLorenzo, attorneys for respondents Louis Chrisomalis and Stephen Chrisomalis (Andrew J. Kyreakakis, of counsel and on the brief).
Stevens & Minter, attorneys for respondents Law Office of Eichenbaum, Kantrowitz, Leff & Gulko and David Leff, Esq. (Francis B. Schultz, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiff Norma Chrisomalis appeals from a judgment of the Law Division, Probate Part, entered in favor of defendants Louis Chrisomalis, Stephen Chrisomalis, The Law Offices of Eichenbaum, Kantrowitz, Leff & Gulko, and David Leff, Esq. The judgment dismissed plaintiff's action to invalidate an antenuptial agreement which waived her right to an elective share in the estate of decedent, Andrew Chrisomalis.
Plaintiff instituted this action seeking, among other relief, a declaration that the antenuptial agreement she had executed, and the waiver of her elective share in decedent's estate contained therein, was null and void, and that the amount of her elective share should thus be fixed. Plaintiff also sought the appointment of a disinterested administrator pendente lite in order to identify the assets of decedent's estate, and an accounting by defendants Louis and Stephen Chrisomalis of their administration, as co-executors of decedent's estate, or, alternatively, the appointment of an independent accountant. Finally, plaintiff sought compensatory damages and attorney fees from defendants The Law Offices of Eichenbaum, Kantrowitz, Leff *52 & Gulko and David Leff, Esq. based on their alleged negligence and breach of duty for their failure to "carry out decedent's intent to provide for [her] in his [w]ill."
Defendants Louis and Stephen Chrisomalis denied any liability to plaintiff and asserted by way of separate defenses, among other things, that plaintiff's claim to an elective share was barred by her waiver under N.J.S.A. 3B:8-10, as well as by the application of the doctrines of equitable estoppel and unclean hands. Additionally, defendants sought by way of a third-party complaint against plaintiff's sons, third-party defendants William, Joseph and Donald Hazley, the return of all monies and properties transferred by decedent to them. Defendants also advanced a counterclaim against plaintiff which sought credit against her elective share, if any, for the difference between the value of property transferred to the aforementioned third-party defendants and the value of property in their present possession, return of numerous items personally held by plaintiff which allegedly belonged to decedent's estate, return of all monies and properties transferred or expended by decedent in reliance on the effectiveness of the antenuptial agreement, and return of real estate held by plaintiff and decedent as tenants-in-common.
The trial court bifurcated the trial of the issue of the validity of the antenuptial agreement from the trial of the issue of the valuation of decedent's assets. At the conclusion of a lengthy bench trial, Judge Schaeffer in the Law Division, Probate Part, held that the "fair disclosure" standard of N.J.S.A. 3B:8-10 concerning the waiver of a spouse's elective share, and not the relevant provision of the Uniform Premarital Agreement Act, applied and had been met. Additionally, the trial court held that "plaintiff made an intelligent and informed waiver of independent counsel," given her background, level of education, prior legal experience and opportunity to be represented by, or seek consultation with, her brother-in-law, who was an attorney and a retired Superior Court judge. Finally, the trial court held that plaintiff was equitably estopped from setting aside the *53 antenuptial agreement as a result of her fraudulent act of signing the agreement while intending not to be bound by it, and thus, causing decedent to detrimentally rely upon it when marrying her. The trial court thereupon dismissed all claims asserted by plaintiff in her complaint and defendants in their counterclaim and third-party complaint, with the exception of their claim to a 1985 Lincoln automobile.
Plaintiff appeals, seeking a reversal of the judgment validating the antenuptial agreement, and a remand for trial of the other issues raised by her complaint. She contends generally that (1) the antenuptial agreement was invalid as a matter of law and, therefore, not enforceable; (2) the conflict of interest and professional malpractice of attorney Leff, who purported to represent both her and decedent in the preparation of the antenuptial agreement, rendered it voidable, and thus, invalidated the waiver of her elective share, and (3) the trial court violated her due process rights by the manner in which it conducted the trial and decided the case. We disagree and affirm.
We are satisfied from our study of the record and the arguments presented that substantial credible evidence in the record, as a whole, reasonably warrants the findings and conclusions of the trial court. We discern no sound reason or legal justification for disturbing these findings and conclusions. Leimgruber v. Claridge Associates, Ltd., 73 N.J. 450, 455-56, 375 A.2d 652 (1977); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974); State v. Johnson, 42 N.J. 146, 161-62, 199 A.2d 809 (1964). See also R. 2:11-3(e)(1)(A). Moreover, all of the issues of law raised are clearly without merit. See R. 2:11-3(e)(1)(E).
We agree entirely with the trial court's conclusion that plaintiff was equitably estopped by her fraud and unclean hands from seeking a declaration that the antenuptial agreement was invalid and unenforceable. The basic equitable maxim of unclean hands provides that "[a] suitor in equity must come into *54 court with clean hands and ... must keep them clean after his entry and throughout the proceedings." A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 246, 66 A.2d 319 (1949); accord Johnson v. Johnson, 212 N.J. Super. 368, 384, 515 A.2d 255 (Ch.Div. 1986); Pollino v. Pollino, 39 N.J. Super. 294, 298-99, 121 A.2d 62 (Ch.Div. 1956). "In simple parlance, it merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Faustin v. Lewis, 85 N.J. 507, 511, 427 A.2d 1105 (1981). While "[u]sually applied to a plaintiff, this maxim means that a court of equity will refuse relief to [any] party who has acted in a manner contrary to the principles of equity." Johnson v. Johnson, supra, 212 N.J. Super. at 384, 515 A.2d 255.
The rule is that while general iniquitous conduct will not operate to bar plaintiff from relief by reason of unclean hands, iniquitous conduct relating to the particular matter or transaction to which judicial protection is sought will operate to bar relief. See 1 Herr, Marriage, Divorce and Separation (1938), § 149, supra. Where the relief sought by the plaintiff is the result of his own wrongdoing, where the unclean hands of the plaintiff [have] infected the very subject matter in litigation, the plaintiff is barred from relief in a court of equity. [Pollino, supra, 39 N.J. Super. at 299, 121 A.2d 62].
See also Feldman v. Urban Commercial, Inc., 78 N.J. Super. 520, 533, 189 A.2d 467 (Ch.Div. 1963), aff'd, 87 N.J. Super. 391, 209 A.2d 640 (App.Div. 1965).
As a corollary to the maxim of unclean hands:
A court of equity, as a court of conscience, can never permit itself to become party to the division of tainted assets nor can it grant the request of an admitted wrongdoer to arbitrate such a distribution. It is clear our court decisions reinforce this very principle: A court of equity can never allow itself to become an instrument of injustice. Associated East Mortgage Co. v. Young, 163 N.J. Super. 315, 330, 394 A.2d 899 (Ch.Div. 1978)[.] [N]or will equity allow any wrongdoer to enrich himself as a result of his own criminal acts. Jackson v. Prudential Ins. Co. of America, 106 N.J. Super. 61, 68, 254 A.2d 141 (Law Div. 1969). In this respect, equity follows the common law precept that no one shall be allowed to benefit by his own wrongdoing. Neiman v. Hurff, 11 N.J. 55, 60, 93 A.2d 345 (1952). Thus, where the bad faith, fraud or unconscionable acts of a petitioner form the basis of his lawsuit, equity will deny him its remedies. Goodwin Motor Corp. v. Mercedes Benz of N.A., Inc., 172 N.J. Super. *55 263, 411 A.2d 1144 (App.Div. 1980). [Sheridan v. Sheridan, 247 N.J. Super. 552, 556, 589 A.2d 1067 (Ch.Div. 1990)].
See also Pollino, supra, 39 N.J. Super. at 304, 121 A.2d 62.
Additionally, the related equitable doctrine of estoppel provides that:
Conduct amounting to a misrepresentation or concealment of material facts, known to the party allegedly estopped and unknown to the party claiming estoppel, done with the intention or expectation that it will be acted upon by the other party and on which the other party does in fact rely in such a manner as to change his position for the worse gives rise to an equitable estoppel. See e.g., Fidelity Union Trust Co. v. Essex County, etc., Co., 130 N.J. Eq. 351, 353 [22 A.2d 296] (E. & A. [1941]); Clark v. Judge, 84 N.J. Super. 35, 54 [200 A.2d 801] (Ch.Div. 1964), aff'd 44 N.J. 550 [210 A.2d 415] (1965). [Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979)].
Accord Miller v. Miller, 97 N.J. 154, 163, 478 A.2d 351 (1984); Foley Machinery Co. v. Amland Contractors, Inc., 209 N.J. Super. 70, 75-76, 506 A.2d 1263 (App.Div. 1986). See also Horsemen's Benev. & Prot. v. Atlantic City Racing, 98 N.J. 445, 456, 487 A.2d 707 (1985).
Moreover, "[a]n estoppel does not require that a fraudulent intent be shown. `If the conduct works an unjust or inequitable result to the person it was designed to influence, the doctrine is applicable.'" Widmer v. Township of Mahwah, 151 N.J. Super. 79, 85, 376 A.2d 567 (App.Div. 1977) (citing N.J. Suburban Water Co. v. Harrison, 122 N.J.L. 189, 196, 3 A.2d 623 (E. & A. 1939)).
As repeatedly stated by our courts:
Equitable estoppel has been defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and at equity, from asserting rights which might perhaps otherwise have existed as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse. Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339 [403 A.2d 880] (1979). [O'Neill v. Washington Tp., 193 N.J. Super. 481, 487, 475 A.2d 55 (App.Div. 1984)].
See also Highway Trailer Co. v. Donna Motor Lines, Inc., 46 N.J. 442, 449, 217 A.2d 617, cert. denied, 385 U.S. 834, 87 S.Ct. 77, 17 L.E.2d 68 (1966); Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 503-04, 117 A.2d 585 (1955). "The doctrine is intended to prevent a party's disavowal *56 of prior conduct if such repudiation would frustrate the demands of justice and good conscience." Miller v. Teachers' Pension & Annuity Fund, 179 N.J. Super. 473, 477, 432 A.2d 560 (App.Div.), certif denied, 88 N.J. 502, 443 A.2d 714 (1981). See also Carlsen, supra, 80 N.J. at 339, 403 A.2d 880; Royal Associates v. Concannon, 200 N.J. Super. 84, 92, 490 A.2d 357 (App.Div. 1985).
Additionally, as our Supreme Court stated in Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619, 432 A.2d 521 (1981):
A misrepresentation amounting to actual legal fraud consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment. See Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254, 257 [314 A.2d 69] (App.Div. 1973), aff'd, 64 N.J. 197 [314 A.2d 68] (1974). The elements of scienter, that is, knowledge of the falsity and an intention to obtain an undue advantage therefrom, see Pomeroy, supra at 422; Gordon v. Schellhorn, 95 N.J. Eq. 563, 573-74 [123 A. 549] (Ch. 1924), are not essential if plaintiff seeks to prove that a misrepresentation constituted only equitable fraud. Equitable Life Assurance Soc'y v. New Horizons, Inc., 28 N.J. 307, 314 [146 A.2d 466] (1958). See also Metropolitan Life Ins. Co. v. Tarnowski, 130 N.J. Eq. 1, 3 [20 A.2d 421] (E. & A. 1941); Hernig v. Harvis, 117 N.J. Eq. 146, 150-51 [175 A. 169] (Ch. 1934). Thus, "[w]hatever would be fraudulent at law will be so in equity; but the equitable doctrine goes farther and includes instances of fraudulent misrepresentations which do not exist in the law." 3 J. Pomeroy, supra, at 486-88. [Whale, supra, 86 N.J. at 624-25, 432 A.2d 521].
Furthermore:
As to [an] allegation of fraud consisting of an intention existing at the time of the execution of the contract not to comply with the terms thereof, it must be remembered that normally such a representation, if it is to form a basis of an action for deceit, must relate to some past or presently existing fact and cannot be predicated upon representations involving matters in futuro. Comfort Spring Corp. v. Brooks Equipment Corp., 13 N.J. Super. 564, 566 [81 A.2d 23] (App.Div. 1951); Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 157 [97 A.2d 511] (App.Div. 1953).
A false representation of an existing intention, however, is actionable. Comfort Spring Corp. v. Brooks Equipment Corp., supra; Landriani v. Lake Mohawk Country Club, supra. [Piechowski v. Matarese, 54 N.J. Super. 333, 345, 148 A.2d 872 (App.Div. 1959)].
See also Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 381, 164 A.2d 607 (App.Div. 1960).
*57 The record here amply supports the trial court's findings and conclusions that plaintiff sought to defraud decedent and his two sons when she executed the antenuptial agreement containing the waiver of her elective share in decedent's estate. Plaintiff knew full well that decedent wished to protect the estate and his sons' interest in the estate from subsequent invasion. Plaintiff signed the antenuptial agreement knowing that she was waiving her interest in her elective share of decedent's estate. Moreover, plaintiff signed the antenuptial agreement notwithstanding the fact that she did not intend to be bound by it, and openly admitted to this fraud.
Additionally, there cannot be any serious dispute that decedent relied upon plaintiff's acknowledgement of his desire to protect his estate, and similarly relied upon the validity of the antenuptial agreement which he and plaintiff entered into in furtherance of this desire. The antenuptial agreement expressly recognized that both plaintiff and decedent desired that their pending marriage
to each other [would] not, in any way, change their own existing legal rights or the legal rights of their children and heirs in the real and personal property of each of them, in the event of the death of either or should their impending marriage be dissolved during their lifetime.
After executing the agreement decedent never changed his will to provide for plaintiff. In previous wills, decedent had provided for his first wife. Thus, it is clear that decedent wanted to protect his sons' interest in the family-run business, and relied on the antenuptial agreement, and the waiver contained therein, to accomplish that.
Furthermore, plaintiff admitted that the reason for the antenuptial agreement was to satisfy the fears of decedent's sons, who were concerned that she was marrying decedent for his money. She even stated expressly, prior to signing the antenuptial agreement, that she did not expect to inherit anything from the decedent. Additionally, defendant Stephen Chrisomalis testified that he was worried about the family business in which he and his brother worked. Consequently, he relied upon *58 the antenuptial agreement and plaintiff's statements that she would not try to take anything belonging to defendants in order to protect this interest. In the circumstances, the trial court properly and correctly concluded that plaintiff is barred from maintaining this action to declare invalid and set aside the antenuptial agreement that she executed.
Accordingly, the judgment under review is affirmed substantially for the reasons expressed by Judge Schaeffer in his thorough and thoughtful letter opinion of July 26, 1991.