**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5469-15T2

1701 E. MAIN, LLC,

      Plaintiff-Appellant,

  v.

WAWA, INC.,

      Defendant-Respondent.

_____

      Argued September 19, 2017 — Decided October 11, 2017

      Before Judges Fisher and Moynihan.

      On appeal from the Superior Court of New
      Jersey, Law Division, Cumberland County,
      Docket No. L-0895-14.

      William F. Ziegler argued the cause for
      appellant (Holston, MacDonald, Uzdavinis,
      Ziegler & Myles, PA, attorneys; Mr. Ziegler,
      on the briefs).

      Erin P. Loucks argued the cause for respondent
      (Shook, Hardy & Bacon, LLP, attorneys; Joseph
      H. Blum and Ms. Loucks, on the brief).

PER CURIAM

    Plaintiff 1701 E. Main, LLC, appeals a summary judgment that

declared an alleged cross-easement between its property and

defendant Wawa, Inc.'s adjoining property "terminated by estoppel." Because the underlying circumstances were fact-sensitive and clouded by the passage of time, and because Brill[1] requires that 1701 be given the benefit of all reasonable inferences, we reverse.

The circumstances are uncomplicated but also uncertain. 1701 is the owner of a nearly square lot at the corner of Wade Boulevard and East Main Street[2] in Millville. 1701's property is adjoined by Wawa's much larger lot. If the reader pictures the entire area as a window with four panes, 1701 owns the pane in the upper left-hand corner, and Wawa the other three, as depicted in the map taken from the record and appended at the end of this opinion.

In 1971, Miles Petroleum, Inc. purchased the lot now owned by 1701. A year later, Miles Petroleum and Wawa reached an agreement memorialized in a June 19, 1972 letter. They agreed that Miles Petroleum would remove "an old dog pen" and some other "junk" from its property, that it would cease parking a truck in a particular area, and that the parties would equally share the cost of black-topping their properties. Of greater importance here,

---

[1] Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

[2] East Main Street is also known as County Highway #49; some maps, such as that appended, and other materials in the record, also refer to the same roadway as Cumberland Road. We will refer to it as East Main Street.

Miles Petroleum and Wawa "both agree[d] to keep the adjoining perimeter of [their] premises free from obstructions in order to permit each other's customers ingress and egress across said property lines from the two business operations."

At the time, Wawa maintained a convenience store, and Miles Petroleum operated a gas station. They apparently both benefited from the 1972 letter-agreement because they agreed to freely allow patrons in need of both a convenience store and a gas station access to both businesses without having to reenter one of the adjoining roadways. The 1972 letter-agreement was never recorded nor were its terms ever included in any other recorded document.

In 2000, Wawa considered redeveloping its property to include the operation of gas pumps. In 2001, after its attempts to purchase another adjoining property failed, and after additional frustrations caused by local resistance to the removal of an old oak tree of historic interest, William Van Artsdalen, a Wawa representative, met with Miles Lerman, the president of Miles Petroleum, for the purpose of buying Miles Petroleum's lot. Lerman, however, sought compensation far greater than what Wawa thought reasonable. Their meeting terminated with Van Artsdalen advising Lerman that Wawa remained interested in purchasing Miles Petroleum's lot but would, if necessary, proceed with a plan to redevelop the property to include gas pumps by running a driveway

from East Main Street through the upper quadrant into the lower two-thirds of its property (as depicted in the appended map).

Wawa and Miles Petroleum never again discussed the matter, and Wawa proceeded with its plans to redevelop its property. Construction occurred in 2006. As part of the property's redevelopment, Wawa blocked any existing right Miles Petroleum may have had to cross over from its lot onto Wawa's, and vice versa, by erecting curbing along their common perimeter.

Miles Lerman died in 2008, and 1701 took title to the Miles Petroleum lot from the Lerman estate. David Lerman, Miles Lerman's son, is 1701's principal.

Sometime between 2010 and 2012, the Department of Transportation reconstructed the intersection of Wade Boulevard and East Main Street and pursued condemnation of 1701's property. That circumstance prompted David Lerman's visit to the site,[3] where he discovered for the first time the curbing along the property's perimeter that is the genesis for this suit.

Following discovery, Wawa moved for summary judgment, arguing the material facts are not in dispute and entitle Wawa to a judgment declaring that any easement rights were terminated by

---

[3] David Lerman's deposition testimony is not entirely clear about when this visit occurred. A fair reading of that testimony would suggest he learned about the curbing no later than March 21, 2012, the date the existing circumstances were confirmed in an email.

estoppel. Wawa contends that either 1701 or its predecessor, Miles Petroleum, were aware of the 2001 curb installation and uttered no discouraging words until more than ten years later.

There is no doubt that an easement or servitude — assuming 1701 possessed any such rights[4] — may be "lost . . . through estoppel." Rossi v. Sierchio, 30 N.J. Super. 575, 578 (App. Div.

---

[4] Although the trial judge's ruling presupposed not only the existence of an easement but also that it was possessed by 1701 and not terminated when the original owner conveyed it either directly or indirectly to 1701, the only proof of such an easement is concededly contained in the 1972 letter-agreement. The 1972 agreement, however, does not include the word "easement" or, for that matter, "servitude," and it expresses only the mutual granting to the other a right to allow their customers to cross the property line. If we assume this was intended to be an easement or servitude — and the existence of such a right is always dependent upon the parties' intentions, Tide-Water Pipe Co. v. Blair Holding Co., 42 N.J. 591, 604 (1964) — the 1972 letter-agreement gives no expression of an intent to allow the conveyed rights to be assigned or inherited. The letter does not state that the right devolves to the recipient's "heirs and assigns," or any similar language, so there is no reason to assume at this stage that Wawa conveyed rights to any person or entity other than Miles Petroleum. The language suggests that the parties conveyed rights only to "each other[]" and not to others who may in the future obtain an interest in the property; that is, the right granted was for the purpose of "permit[ting] each other's customers ingress and egress across said property lines from the two business operations." A literal reading would therefore suggest that "each other's customers" refers to Wawa's and Miles Petroleum's customers and not necessarily 1701's, and that "the two business operations" mentioned were the business operations of Wawa and Miles Petroleum, not 1701. There may be other uncertainties about the relationship between the owners or occupiers of the two lots due to the sparse record of events between the 1972 agreement and the 2001 meeting that may impact the ultimate disposition of this action.

1954); see also Johnston v. Hyde, 33 N.J. Eq. 632, 643 (E. & A. 1881). The American Law Institute recognizes that a servitude will be deemed modified or terminated when the party possessing the servitude's benefit not only "communicates . . . by conduct, words, or silence, an intention to modify or terminate the servitude," but also communicates "under circumstances in which it is reasonable to foresee that the burdened party will substantially change position on the basis of that communication, and the burdened party does substantially and detrimentally change position in reasonable reliance on that communication." Restatement (Third) Property § 7.6 (2000).

In applying these principles,[5] which closely align with New Jersey common-law estoppel principles, see, e.g., Segal v. Lynch, 211 N.J. 230, 254 (2012); Carlsen v. Masters, Mates & Pilots Pension Plan Tr., 80 N.J. 334, 339 (1979); Clark v. Judge, 84 N.J. Super. 35, 54 (Ch. Div. 1964), aff'd, 44 N.J. 550 (1965), to the circumstances available from the factual material provided by both 1701 and Wawa, there's no question that if a communication was made by Miles Petroleum — the party then possessing the alleged benefit — it was, at best, conveyed through silence. Van Artsdalen

_____

[5] In reviewing the summary judgment in question, we apply the same Brill standard that governed the trial court's disposition of the motion. See Townsend v. Pierre, 221 N.J. 36, 59 (2015); Gil v. Clara Maass Med. Ctr., 450 N.J. Super. 368, 375 (App. Div. 2017).

acknowledged in his deposition that when he met in 2001 with Miles Lerman — the only interaction between the parties regarding Wawa's redevelopment plans — neither Lerman nor Van Artsdalen mentioned the 1972 letter-agreement and the latter never mentioned Wawa's intent to preclude vehicles from crossing the perimeter. So, as to the first element of the Third Restatement's estoppel test, Wawa would have us assume that Miles Lerman's silence in response to Van Artsdalen's silence about the installation of curbing or any other obstacle conveyed an intention to modify or terminate the alleged easement. Because this question was posed at the summary judgment stage — a time at which 1701 was entitled to the benefit of all reasonable inferences — we must conclude that this fact-sensitive question about the significance of Miles Lerman's silence as a response to Van Artsdalen's silence may be determined only at trial. That issue alone compels reversal of the order under review.

The same conclusion must also be reached with respect to the other aspects of the Third Restatement's estoppel test. Even if this factual record could be interpreted as demonstrating Miles Lerman's silence — about either the 1972 letter-agreement or Wawa's unspoken intent to install curbs around the perimeter — conveyed an intention favorable to Wawa's position, the court must also be satisfied this silence occurred, in the words of the Third

A-5469-15T2

Restatement, "under circumstances in which it [was] reasonable to foresee that [Wawa would] substantially change position." A fair reading of Van Artsdalen's deposition testimony, which provides the only insight into the parties' discussions about Wawa's redevelopment of its property, reveals that neither party had any interest in changing any position or giving up any rights. When asked to sell the property to Wawa, Miles Lerman made what Wawa viewed as an exorbitant offer that ended the "negotiations." And, while Wawa remained interested in buying, but not at Lerman's price, Wawa neither expressed nor suggested any intention but to proceed with its redevelopment in some other manner than it would have if it owned all four window panes. In short, both parties stuck to their guns and it is reasonable to infer that not an inch was given by either party about their intentions prior to the meeting. From this factual record and through the application of the Brill standard, the trial judge could not conclude Miles Lerman silently conveyed a willingness to allow Wawa to terminate an alleged and unmentioned easement during their meeting. These questions can only be resolved at trial.[6]

---

[6] Similarly, there is no evidence in the summary-judgment record to suggest Miles Lerman was otherwise aware of Wawa's actions in curbing around Miles Petroleum's property. We are not presented with a situation where the silent party resided across the street from the construction site and waited until the work was done

Reversed and remanded for trial. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

APPENDIX[7]



---

before complaining. Miles Lerman was retired and, by all accounts, was spending his days either in Vineland, Philadelphia or Florida. It has not been shown he ever observed Wawa's construction work or was ever aware of the curbing before his death in 2008. In fact, David Lerman testified at a deposition that his father never visited or drove by the property at any time relevant to these circumstances.

[7] 1701's lot is the 150-by-150-foot lot in the upper lefthand corner; Wawa owns the other property depicted.