821 A.2d 104 (2003)
359 N.J. Super. 562
Phyllis M. CLARKE, Plaintiff/Respondent,
v.
George CLARKE, by his personal representative, Linda COSTINE, Defendant/Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 2003.
Decided April 25, 2003.
*105 Peter C. Paras, argued the cause for appellant (Paras, Apy & Reiss, Red Bank, attorneys; Mr. Paras, of counsel and on the brief).
Helen L. Glass, Hackensack, argued the cause for respondent.
Before Judges PRESSLER, WALLACE, JR., and HOENS.
The opinion of the court was delivered by WALLACE, JR., J.A.D.
Defendant George Clarke appeals from an order of the Chancery Division awarding plaintiff Phyllis Clarke $118,700 for alimony arrearages plus a separate award for interest, attorneys' fees, and costs. Defendant contends that (1) plaintiff's claim for alimony arrears is barred by the doctrine of either laches, waiver, or equitable estoppel, and (2) the trial court erred in assessing interest on the award and in awarding plaintiff counsel fees. Except for the counsel fee issue, we affirm.
Plaintiff and defendant were divorced on June 9, 1976, following twenty-nine years of marriage. They had three adult children at the time of divorce. In addition to equitable distribution, plaintiff was awarded alimony of $100 per week. Defendant failed to comply with the orders entered by the court. Plaintiff filed numerous motions seeking enforcement, but defendant continued to avoid his obligations. In March 1978, the arrears were fixed at $4,500 as of February 13, 1978. Finally, *106 on December 22, 1978, the court entered an order terminating the account maintained by the Union County Probation Department, noting that defendant had moved to Staten Island, New York, and that plaintiff was advised to file a Uniform Support for Dependents Law complaint, but had not done so.
Plaintiff filed no other enforcement motions until August 29, 2001, when she filed a motion seeking to fix the alimony arrears as of the death of defendant at $118,700, as well as interest, counsel fees, and costs. In her certification in support of her application and the depositions in the record, the following facts were revealed. Defendant died on January 30, 2000. The youngest daughter of the parties, Linda Costine, was appointed the personal representative of defendant's estate. Plaintiff stated she was destitute and her only income was from Social Security. She recounted the numerous motions she filed to enforce her rights, but after defendant "left the country to sail around the world," she was financially unable to take any other legal action. On occasion, she hired private investigators and requested the police to find her husband, but her efforts were not fruitful. She acknowledged that in the mid or late 1980's defendant asked her to drop the outstanding warrant so he could recover money in a lawsuit against the person to whom he sold his business. At that time, defendant promised to pay her the alimony arrears from the recovery in the lawsuit. Plaintiff cooperated, but defendant never paid her the money. Shortly before defendant's death on January 30, 2000, their daughter Janet learned that defendant was living in Cocoa Beach, Florida and told plaintiff of his whereabouts. Plaintiff retained an attorney in Florida, but before any action was filed, defendant died. Plaintiff subsequently learned that defendant transferred all of his assets to their daughter Linda. As a result, she filed an action in Florida against Linda on the theory of fraudulent transfer and she obtained an order enjoining Linda from spending any of the money.
Plaintiff also submitted certifications of their son George and their daughter Janet. George certified that in late 1978, plaintiff asked him to go to Staten Island and speak to defendant about paying her the alimony due. George traveled to the Staten Island address for defendant where a woman told him that her daughter and defendant left the country to sail around the world. George reported this information to his mother. Later, in 1988 or 1989, George renewed his relationship with defendant. He also recounted the incident where plaintiff had a warrant canceled in exchange for expected alimony payments from a lawsuit. After the lawsuit, defendant paid no money to plaintiff and again left the country. George stated that from the late 1980's until shortly before defendant's death in January 2000, he had a good relationship with defendant. During that time, George would meet his father in the Caribbean or Florida and sail to different islands with him. George believed defendant was wealthy and spent approximately eight years sailing from the Orient through the Mediterranean and then across the Atlantic Ocean to the United States. George was aware his father spent some time in Annapolis, Maryland, where he lived on a boat and sailed from there to the Caribbean. He said his father forbade him from telling plaintiff where he was and that he honored his father's wishes. George stated that although he knew plaintiff was looking for defendant to collect her back alimony, he never told plaintiff where defendant was, but he intended to give plaintiff money out of his anticipated inheritance.
Janet's certification was consistent with George's. Further, Janet explained that *107 she obtained her father's Florida address from a computer search and gave it to her mother shortly before the Florida action was initiated.
In her certification in opposition to plaintiff's motion, Linda certified she was the personal representative of defendant's estate. She asserted that her sister Janet controls plaintiff and that Janet's fervor increased after defendant died. It is Linda's belief that the only way Janet and George can reach defendant's money is by forcing their mother to take this action. Linda claimed in her certification that plaintiff had deteriorated mentally. She claimed that her mother did not need the alimony and that plaintiff, Janet, and George knew where defendant was at numerous times during the last twenty-six years.
Linda attached to her certification a transcript of a taped conversation she had with defendant in 1999. In the conversation, defendant discusses some of his investments with Linda and some tax consequences of the way he has structured the investments. At one point, Linda asked defendant if there was anything he wanted to say to anyone on the tape. Defendant replied that he left no money to Janet because he had no contact with her and had not provided for George because George had fought with him while in a drunken rage.
Plaintiff submitted a reply certification and disagreed with many of Linda's assertions. Plaintiff certified she was not suffering from dementia. She sought to find defendant many times but could not find him, did not live the comfortable lifestyle Linda described, spent most of her cash from equitable distribution on attorneys' fees, collected rent from her children to survive, and filed this application to obtain the alimony rightfully belonging to her.
On November 2, 2001, the motion judge heard oral argument. The judge found that following the divorce judgment, plaintiff made many applications to the court to enforce the alimony award, but defendant refused to pay alimony. The judge was satisfied that defendant left the jurisdiction, and that despite defendant's attorney's argument that plaintiff said "I do not want your money," the judge found no certification to support that assertion. In determining whether to enforce the alimony provision in the judgment or to apply estoppel because of plaintiff's actions or lack thereof, the judge stated:
Now in arguing over the waiver, Linda Costine, defendant's [ ] estate representative, does argue that after several years of disinterest, the defendant had the right to rely on her waiver of alimony to live his life and to make the financial arrangements that he made. However, this Court finds that that argument is factually misplaced and lacks legallegal support.
The plaintiff never made any representations, both implicit or explicit to defendant, that she waived her alimony rights. To the contrary, the evidence shows that the plaintiff consistently pursued, when she knew where he was, the enforcement of those rights. And her efforts only ceased after she was notified that the defendant sailed to the Orient, and that at that point in time he was no longer residing in the area, and after she learned of the Florida's residence, there was a certification that she did try and commence proceedings.
The defendant swore George and Linda to secrecy as to his whereabouts. Certifications were filed and indicated that clearly the plaintiff was never made aware of where George's whereabouts were.

*108 If the defendant is going to meet an equitable estoppel standard, which is defined as the effect of voluntary conduct of a party where he is absolutely precluded at both law and at equity from asserting rights, which might have existed against another person who has in good faith relied upon such conduct and has been led there by the change for the worst. Chemolis v. Chemolis [Chrisomalis v. Chrisomalis], 260 N.J.Super. 50 at 55, 615 A.2d 266, citing Carlson [Carlsen] v. Masters, Mates and Pilots, (phonetic) 80 and N.J. 334, at 339, [403 A.2d 880] [(]1979[)].
The defendant has not relied on any voluntary conduct by the plaintiff. Furthermore, as I indicated in my questions to the parties here, it's the defendant's conduct which I find was in bad faith. The defendant in this case never made an attempt, ever, to satisfy his alimony obligation, and this goes back to the time that the alimony was awarded back in the late `70s.
The plaintiff did make efforts to collect. She, at some point in time basically threw up her hands because she didn't know where George, her husband, was located. There's been no indication that George had ever made an attempt to advise her where he was, to attempt to make the alimony payments. This case went up to the Supreme Court on a request for certification back in the `70s with him fighting, consistently, not to undertake his responsibilities in this judgment of divorce.
I do not find that, therefore, the arguments made by the defendant's estate at this point in time, carry much weight, because as I said before, it was his acts that has led all of this to happen, not the acts of the plaintiff. There's no proof at all that's been provided to this Court that she ever said to him, or indicated to him, that she never wanted to get her alimony. And there was no indication at any point in time that the husband in this case had ever sought to terminate his right to pay alimony because her lifestyle had changed to such extent that he felt that paying the $100 per week as alimony was no longer necessary because her lifestyle was such that she didn't require that money. In other words that shehe never requested based on a change in circumstances that his obligation be terminated.
The judge concluded that plaintiff should receive a judgment for the alimony arrears and turned to the issue of interest. The judge found that given the behavior of defendant over the course of time, an award of interest under Rule 5:7-5(a) was appropriate along with attorney's fees. Plaintiff's attorney had previously filed a certification of services wherein she certified she received a retainer of $2,500 and the total fees due and owing as of August 28, 2001, were $6,654.33.
The judge memorialized her decision in the order of November 2, 2001, fixing alimony arrears in the amount of $118,700, awarding interest on the arrears to be computed, and awarding plaintiff attorney's fees and costs in the amount of $6,654.33. In a subsequent order dated November 30, 2001, the judge fixed interest in the amount of $104,316.43 and awarded plaintiff additional attorney's fees and costs in the sum of $855.00. The result was a judgment in favor of plaintiff against defendant in the total sum of $230,526.66.
We are satisfied from our study of the record and the arguments presented that, with the sole exception of counsel fees, the orders appealed from are supported by the record and there is no sound reason for us to interfere with them. In our view, the motion judge properly exercised her discretion *109 in entering these orders, and all of the issues of law raised with respect to them are without merit. R. 2:11-3(e)(1)(E). Consequently, we affirm the orders substantially for the reasons expressed by Judge Cassidy in her thoughtful and thorough oral opinion of November 2, 2001. We add only the following brief comments.
Defendant does not deny the amount of alimony that was awarded, but rather asserts the equitable defenses of laches, waiver, and equitable estoppel. In general, laches is the failure to assert a right within a reasonable time resulting in prejudice to the opposing side. L.V. v. R.S., 347 N.J.Super. 33, 39, 788 A.2d 881 (App.Div.2002). The key factors are the length of delay, reasons for delay, and change of position by either party during the delay. Ibid. Here, while the delay was unusually long, the judge found ample justification for the delay. More importantly, there was no evidence that defendant changed his position or was prejudiced by the delay. The evidence was overwhelming that defendant refused to pay the alimony, left the State of New Jersey, and secreted his whereabouts. Under these circumstances, neither defendant nor his estate should benefit from plaintiff's unsuccessful efforts to locate him. While we might reach a different result if defendant's whereabouts were known, under the circumstances here, neither defendant nor his estate should benefit from plaintiff's inability to locate defendant.
Nor did plaintiff waive her alimony by not filing a claim in New York, by withdrawing the warrant at defendant's request, or in not taking any other action after defendant left the State of New Jersey in 1977. Waiver is the voluntary relinquishment of a known right. It "implies an election by the party to dispense with something of value, or to forego some advantage which [that party] might have demanded and insisted on." West Jersey Title & Guaranty Co. v. Industrial Trust Co., 27 N.J. 144, 152, 141 A.2d 782 (1958) (citation omitted). Contrary to defendant's contention, plaintiff sought to locate defendant in Staten Island by sending her son there to look for defendant. George discovered that defendant had departed the country to sail around the world. Moreover, in light of plaintiff's unsuccessful attempts to receive alimony, we cannot fault her for cooperating in the cancellation of the warrant in exchange for a promise from defendant to pay alimony from any resulting judgment. Plaintiff's inaction was the result of frustration as much as anything else. There was no evidence that she waived her claim for alimony.
The doctrine of equitable estoppel is defined as "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse ..." W.V. Pangborne & Co., v. New Jersey Dept. of Transp., 116 N.J. 543, 553, 562 A.2d 222 (1989)(quoting Carlsen v. Masters, Mates & Pilots Pension Plan Trust, 80 N.J. 334, 339, 403 A.2d 880 (1979) (citations omitted)). Here, there was no evidence that defendant relied upon plaintiff's inaction or that he changed his position for the worse. Defendant consistently refused to pay alimony. We are in complete accord with Judge Cassidy's finding that it was the defendant who acted in bad faith.
Additionally, the award of interest is discretionary. Rule 5:7-5(a) provides that "[f]or past-due alimony ... payments *110 ..., the court may ..., assess a late interest charge against the adverse party at the rate prescribed by Rule 4:42-11(a)." We find no abuse of discretion in the judge's conclusion that "given the behavior of defendant in this case over the course of time[,"] interest should be awarded to plaintiff.
We turn now to defendant's contention that the judge failed to give any reasons for the award of counsel fees. The award of counsel fees in a matrimonial case rests with the sound discretion of the trial judge. See Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971); Chestone v. Chestone, 322 N.J.Super. 250, 258, 730 A.2d 890 (App.Div.1999). Rule 5:3-5(c) provides numerous factors the judge should consider in determining a counsel fee application which include:
(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c).]
Unfortunately, the judge's decision to award counsel fees did not address the pertinent factors under Rule 5:3-5(c), and failed to make the required findings set forth therein. See R. 1:7-4. Consequently, we remand for the trial judge to reconsider whether to award counsel fees and to make findings of fact and conclusions of law with respect thereto.
We reverse that portion of the orders of November 2, 2001, and November 30, 2001, awarding plaintiff counsel fees and remand for reconsideration of that issue. In all other respects, the orders under review are affirmed. We do not retain jurisdiction.