**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2674-21

G.G.,

    Plaintiff-Respondent,

v.

J.G.,

    Defendant-Appellant.

_____

Submitted October 18, 2023 – Decided August 8, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0223-01.

The Law Office of Darren C. O'Toole, LLC, attorneys for appellant (Darren O'Toole and Alexa N. Joyce, of counsel and on the briefs).

McKenna, DuPont, Stone & Washburne, attorneys for respondent (Jennifer Stone Hall, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant J.G. appeals from an order denying her motion to enforce various provisions of the property settlement agreement (PSA) she and plaintiff G.G. executed nearly twenty years earlier.[1] We affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

I.

The parties were married in 1980, have one child who was born in 1981, and divorced by way of an October 23, 2000 final judgment of divorce, which incorporated the parties' August 16, 2000 PSA. Five months after the parties were married, plaintiff became paralyzed from the waist down and used a wheelchair during the rest of their marriage. When they executed the PSA, the parties' marital home was located in Monmouth Beach, New Jersey, was encumbered by a mortgage of approximately $242,000, and had a fair market value of $600,000. Their vacation home was located in Orlando, Florida, was encumbered by a mortgage of approximately $95,000, and had a fair market value of $150,000.

---

[1] We use the parties' initials because we include in the opinion information regarding defendant's mental health counseling. See State v. J.H.P., 478 N.J. Super. 262, 283 n.1 (App. Div. 2024) (citing Rule 1:38-3(a)(2)) ("us[ing] initials to protect the confidentiality of defendant's mental health diagnoses and evaluations").

In the PSA, the parties agreed:

2.1  Marital Residence:  . . .  The HUSBAND shall have exclusive possession of the marital premises due to his disability and the configuration of the home to be handicapped accessible.  The WIFE shall vacate the marital home on or before November 1, 2000.

HUSBAND shall be responsible for all mortgage payments, taxes, maintenance, insurance and repair costs and expenses, and shall indemnify and hold WIFE harmless with regard to same and for any losses sustained as a result of any default in said mortgage.  Should the HUSBAND fail to make timely mortgage payments causing arrears of more than three (3) months when the WIFE is still an obligor under the present mortgage note, she shall have the right to demand the sale of the marital home.  Other than the accrual of mortgage arrears, the HUSBAND shall have the right to determine when and if he wishes to sell the Monmouth Beach home.

The parties agree that the WIFE owns fifty (50%) percent of the Monmouth Beach home.  The HUSBAND agrees to give the WIFE $179,000.00 representing one-half of the net equity.  Payments shall be made by HUSBAND to WIFE in the amount of $17,900.00 per year for ten (10) years or the balance of the net equity should HUSBAND decide to sell the premises before 10 years have passed.  These payment[s] represent equitable distribution to the WIFE and are non-taxable.  The net proceeds shall be defined as the balance remaining from the sale after the payment of the mortgage, taxes, attorney fees, realtor commissions and any other expenses related to the ownership and sale of the premises.

3

The parties further agree that, should the Monmouth Beach home sell for more than $600,000.00, the WIFE shall receive 25% of the net equity above $600,000.00.

2.2  Vacation Home in Florida:  . . . The WIFE may have access to the Florida premises upon 48 hours['] notice to the HUSBAND.  HUSBAND shall have access to the premises upon 48 hours['] notice to the WIFE.  The HUSBAND agrees to pay all mortgage, maintenance, upkeep expenses and association fees and has the sole right to decide when and if he wishes to sell the Florida property.

The parties further agree that either can buy out the other's one-half interest in the Florida property at a comparative market analysis price done by a realtor less any realty commission fees.

. . . .

2.3  Payment to Wife:  For the mutual promises and covenants herein contained, the HUSBAND agrees to pay to the WIFE additional equitable distribution in the amount of $50,000.00 within thirty (30) days of the signing of the within Agreement.

. . . .

3.1 Alimony:  The HUSBAND shall pay alimony to the WIFE in the amount of $1,600.00 per month upon the WIFE vacating the marital home. . . .  Alimony shall terminate upon the happening of either the death or remarriage of the WIFE or death o[f] the HUSBAND.

. . . .

4

3.2 <u>Life Insurance</u>: HUSBAND shall maintain the WIFE as beneficiary on an existing life insurance policy in the amount of $25,000.00.

. . . .

3.4 <u>Wife's Health and Dental Insurance</u>: The HUSBAND shall provide basic and major medical and dental insurance for the benefit of the WIFE for so long as he has an obligation to pay WIFE alimony. The HUSBAND shall be obligated to pay WIFE's unreimbursed medical expenses except if WIFE uses providers outside the HUSBAND's plan and/or undergoes elective surgeries or procedures.

. . . .

3.6 <u>Wife's Schooling</u>: The HUSBAND agrees to pay WIFE'S tuition should she desire to return to school.

On August 5, 2019, defendant moved to enforce litigant's rights, asserting plaintiff had violated paragraphs 2.1, 2.2, 2.3, and 3.2[2] of the PSA. Defendant asked the court to enforce the PSA by compelling the sale of the two properties and requiring plaintiff to provide defendant with $50,000, proof of life insurance, and money for her counsel fees.

---

[2] In her notice of motion, defendant referenced paragraph 3.3 of Article 3 of the PSA. That paragraph reference appears to be a typographical error. Paragraph 3.3 of Article 3 of the PSA addresses automobile insurance. Paragraph 3.2 addresses life insurance. For plaintiff's purported violation of paragraph "3.3," defendant asked the court to enforce the paragraph by "compelling plaintiff to provide proof of life insurance within 30 days."

A-2674-21

In support of the motion, defendant submitted a certification in which she testified she had not previously moved to enforce the PSA because she was "petrified" due to plaintiff's "abuse" and "coercive behavior." Defendant certified she had been diagnosed with post-traumatic stress disorder, battered woman syndrome, and major depressive disorder and that those "diagnoses [were] directly correlated to years of [p]laintiff's abuse." That assertion was not supported by a report from an expert witness.

According to defendant, in 2010 she went to the New Jersey property to discuss its sale with plaintiff, and he became irate, screamed at her, and threatened her. She attached documents indicating she had attended five sessions of a domestic-violence counseling program in 2010 and received treatment at a behavioral health clinic in 2013. According to the records from the behavior health clinic, she was evaluated on April 16, 2013, began the next day a "[w]omen's program in the trauma track," and was discharged on June 7, 2013. Defendant's primary therapist stated in her discharge summary that at her admission, defendant had, among other things, "reported flashbacks and nightmares from past abuse from [her] ex-husband." The therapist stated:

> [Patient] continued to report PTSD symptoms including flashbacks, nightmares and hyperstartle. [Patient] reported a decrease in nightmares and hyperstartle but continued flashback from past abuse from ex-husband.

6

[Patient] reported that she continues to speak with ex-husband due to sharing property together. [Patient] and ex-husband will go to court at some point to divide property and it appears that this process has increased [patient] flashbacks. This is evidenced by [patient] reporting that she was triggered by organizing documents from previous properties she owned with ex-husband. Therapist and [patient] have discussed creating a distress tolerance kit that will assist in managing triggers while at home and in public. [Patient] did not report success with using distress tolerance kit. [Patient] reported that using deep breathing and grounding techniques would help to decrease intensity of flashbacks and anxiety.

The therapist described defendant's condition at discharge as "improved." She did not opine that defendant was unable to speak with her ex-husband, continue to share property with him, or "go to court" to "divide" the property. Nor did she recommend against defendant participating in any of those activities.

In 2015, defendant obtained a temporary restraining order (TRO) against plaintiff. The TRO was dismissed in 2016 when the court entered an order in another matter, restraining plaintiff from communicating with defendant or her husband, going to or driving by her house, and committing "any future acts of domestic violence against" her.

Regarding the New Jersey property, defendant certified plaintiff had failed to make a single payment of the ten $17,900 annual payments he was required to make under paragraph 2.1 of the PSA and, thus, she had "received

7

nothing for [her] share of the marital home." She also asserted plaintiff had not paid her the $50,000 in equitable distribution he was to pay her under paragraph 2.3. Defendant claimed the value of the New Jersey property had increased but did not cite any support for that claim. Defendant asked the court to modify the PSA so that the proceeds from the sale of the property would be "split on a fifty-[fifty] basis" and to pay her the $50,000.

Regarding the Florida property, defendant certified plaintiff had "failed to maintain the Florida property as required," citing documents from a 2009 lawsuit brought by the homeowners' association about outstanding unpaid homeowners' association dues, and had incurred judgments and liens against the property. She asked that the Florida property be listed for sale immediately and that any judgments and liens be paid from plaintiff's share.

Defendant certified plaintiff had violated paragraph 3.1 of the PSA because he had stopped paying her alimony in 2006 even though she did not remarry until 2007. She asked for an award of $19,200, equal to twelve months of alimony payments. According to defendant, plaintiff stopped paying for her medical insurance in 2004 even though paragraph 3.4 of the PSA required him to provide medical insurance "for so long as he ha[d] an obligation to pay [her] alimony." Defendant sought $4,313.81 in unspecified medical bills she had

incurred from 2005 through 2007. She attached to her certification a copy of a certificate from Horizon Blue Cross Blue Sheild of New Jersey stating her coverage had ended July 1, 2004. She did not attach copies of the medical bills. She asked for proof of life insurance from plaintiff pursuant to paragraph 3.2 of the PSA. And she asked the court to compel plaintiff to contribute to the counsel fees she had incurred in bringing the motion to enforce.

Plaintiff opposed defendant's motion and cross-moved for an order restraining defendant from using or accessing the Florida property, confirming defendant would be paid $179,000 and $50,000 directly from settlements plaintiff anticipated receiving in 2020 from a medical-malpractice lawsuit he had filed in 2017 and another one he planned to file "soon," and compelling defendant to sign a deed relinquishing her interest in the New Jersey property on receipt of the $179,000.

In support of his cross-motion, plaintiff submitted a certification in which he denied defendant's abuse claims, claiming he was not physically capable of the abuse she had alleged and that she could have walked away given that he was confined to a wheelchair. He disputed defendant's characterization of their post-divorce relationship, pointing out he had visited defendant twice when she was hospitalized, had arranged transportation for her father when he was ill and

9

had attended his funeral after he died, and had allowed her parents to live on the Florida property for over a year while he paid their carrying expenses. Plaintiff detailed his recent health history, including hospitalizations, surgeries, and new "permanent and debilitating injuries." Plaintiff stated he had "lost [his] business years ago" and described himself as having "been bedridden for years."

Plaintiff conceded he owed defendant the $179,000 in payments related to her equity interest in the New Jersey property and the $50,000 payment in other equitable distribution and contended he had told defendant he would pay her that money once he received the settlement funds from his medical-malpractice cases. As for the Florida house, he certified the property had been maintained, the mortgage was current, and "there are no known liens or judgments." He stated he did not want to sell the property but wanted to buy out defendant's share pursuant to the PSA.

As for support, plaintiff certified he had maintained medical insurance for defendant and had paid defendant $500 per week or $2,000 to $2,500 per month in cash until she remarried in 2003. He contended he was no longer obligated to maintain life insurance on defendant's behalf because she had remarried.

Defendant submitted a certification in opposition to plaintiff's cross-motion and in further support of her motion. She argued equity required that

10

plaintiff pay her the $179,000 owed to her regarding her equitable interest in the New Jersey property plus "a reasonable rate of interest as well as 25% of the proceeds as the property is valued over $625,000." She denied she had agreed to wait for him to receive settlement proceeds from his lawsuits. Defendant indicated she had "no objection to plaintiff having 30 days to buy [her] out" of the Florida home and asked that it be listed for sale immediately if he failed to do so. She objected to any restrictions on her use of the property in the interim. She again asserted plaintiff had prematurely stopped paying her medical insurance and alimony because she did not remarry until June 6, 2007, as shown in an attached copy of her marriage license.

The parties agreed to participate in mediation. A Family Part judge entered an order on October 4, 2019 confirming that agreement, denying the motion and cross-motion without prejudice, and directing the parties at the completion of the mediation to notify the court so the court could relist the motions if issues remained to be decided. The mediation was unsuccessful.

The judge heard argument on December 20, 2019. During argument, defense counsel asked the judge to compel the sale of the New Jersey property because plaintiff had not made a single payment he was obligated to make under paragraph 2.1 of the PSA and to compel the sale of the Florida house because

11

plaintiff was consistently late in paying the mortgage and liens encumbered the property. Plaintiff's counsel conceded plaintiff owed defendant money but questioned whether the judge had the authority to compel the sale of the properties when, under the terms of the PSA, only plaintiff had the right to sell them and whether it should be sold given that plaintiff needed the physical accommodations built into the house and defendant did not really need the money.

That day, the judge entered an order requiring the parties to obtain an appraisal of the New Jersey property from Benchmark Appraisers and to submit case information statements (CISs). The New Jersey property was appraised at $1,450,000 as of January 28, 2020.

In September 2021, the court asked the parties to submit updated CISs and position statements. Defendant submitted a new report from the same company that had issued the prior appraisal report. The New Jersey property was appraised at $1,625,000 as of October 12, 2021.

On March 25, 2022, the judge entered an order with an attached statement of reasons, denying defendant's request to compel the sale of the New Jersey property because the sale of the property was not "compulsory" under the terms of the PSA and finding no "deliberate violation of litigant's rights" because

12

"[b]oth parties have delayed more than [nineteen] years before seeking enforcement."  The judge acknowledged defendant's testimony regarding the fear and intimidation she felt about plaintiff but was "unpersuaded that she could not have filed [an enforcement motion] before 2019."

The judge found defendant was "entitled to the $179,000 she never received."  She denied plaintiff's request that the $179,000 be paid out of the settlement proceeds he anticipated receiving and that defendant sign a deed relinquishing her interest in the New Jersey property.  Instead, the court ordered plaintiff to refinance the New Jersey property within forty-five days and to pay defendant within sixty days $376,625,[3] which equaled "the $179,000 original equity payment, plus 25% of the net equity above $600,000 as defined in the PSA" and was "full satisfaction of defendant's equity interest in the house."  The judge based that calculation on the $1,450,000 valuation in the 2020 appraisal report, less $17,000 in "taxes" and $42,500 in "realtor fees."  The judge used the

_____

[3] The order provides that "[p]laintiff shall pay defendant within 60 days" and addresses the consequences if "he is unable to refinance the house or pay defendant within 45 days."  We understand the judge meant to require plaintiff to refinance the house within forty-five days and pay defendant within sixty days.  In the statement of reasons, the judge wrote "[d]efendant will receive $410,954.20 from plaintiff."  That figure is followed by a table with calculations listing a "Total to make defendant whole" of "$376,625.00," the same amount listed in the order.  The $410,954.20 figure appears to be an error, and the parties do not contend otherwise.

2020 appraisal figure, noting that appraisal had been "[o]rdered by this court to be shared by the parties. The court did not expect there to be a war over the value." The judge found that the PSA did not give plaintiff "infinity" to pay defendant the $179,000 he owed her and, to enforce the terms of the PSA, she would compel the sale of the New Jersey property if he failed to refinance the property or pay defendant.

The judge explained that although defendant was entitled to the $179,000:

> Because she delayed in seeking enforcement, and plaintiff relied upon it to his detriment, there will be no gross up of this amount. Defendant will receive substantial additional value because of the time that has gone by. The increased value in the property is substantial, and defendant benefits from the increase and as long as she is paid by plaintiff, she will be made whole. If plaintiff cannot buy out defendant at the values established currently, he will have to face the fact that the home will be sold. He cannot simply continue to live in the home indefinitely and deprive defendant of her funds which he should have paid more than 10 years ago.

The judge denied as moot the aspects of defendant's motion and plaintiff's cross-motion regarding the Florida property because the property already had been sold, with $300,000 in sale proceeds being held in trust. The judge ordered the parties to divide the sale proceeds between them equally, plaintiff to pay defendant $50,000 from his share, and plaintiff's attorney to pay off the

14

mortgage on the New Jersey property and to provide defendant with proof of that pay off. The judge noted defendant held a lien on the New Jersey property and barred plaintiff from further encumbering the property until defendant's interest was satisfied.

The judge denied defendant's request to compel plaintiff to provide proof of life insurance, finding plaintiff no longer had an obligation to maintain life insurance for defendant's benefit because he no longer had an obligation to pay her alimony. The judge did not otherwise address the aspects of defendant's motion regarding alimony or medical insurance. The judge also denied defendant's counsel fee application. Defendant appealed from the order.

On June 22, 2022, defendant moved to enforce litigant's rights, to compel the sale of the New Jersey property, and to enforce the $376,625 payment provision of the March 25, 2022 order and provisions of the PSA regarding alimony, defendant's medical insurance, and defendant's "schooling," referencing paragraphs 3.1, 3.4, and 3.6 of the PSA. Plaintiff opposed the motion and cross-moved to stay enforcement of the March 25, 2022 order pending defendant's appeal. Defendant opposed the cross-motion.

During argument, plaintiff's counsel represented plaintiff had paid defendant the $50,000 he owed her in equitable distribution as set forth in

15

paragraph 2.3 of the PSA and her share of the proceeds from the sale of the Florida property. She also stated the bank that held plaintiff's current mortgage on the New Jersey property had declined his refinancing application. After hearing argument, the judge denied defendant's motion as to payment of alimony, medical bills, and her education based on the doctrine of laches. The judge stated she was "not moved" by defendant's submissions regarding "her history of involvement with counselors and therapists." The judge found defendant's requests for relief "could have been submitted earlier" and that the failure to submit them earlier prejudiced plaintiff in that he could not "go back and ask if insurance was covered, if there's coverage. Were these bills submitted? He cannot go back and check to see what he actually did and didn't pay because the first time he hears from this . . . is three years ago when the initial motion was filed." Declining to compel the sale of the New Jersey property given the pending appeal, the judge granted the cross-motion for a stay.

On August 12, 2022, the judge entered an order denying defendant's motion and granting plaintiff's cross-motion for a stay pending appeal. Defendant did not appeal from that order or seek to expand the appellate record to include her submission in support of her motion. Plaintiff moved to expand

16

the appellate record to include the August 12, 2022 order and transcript of the proceedings. We granted that unopposed motion.

On appeal, defendant argues the judge erred in not compelling the sale of the New Jersey property, not using the most recent appraisal to value the property, her use of realtor fees and taxes in determining the equity in the property, not adding interest, and failing to enforce the PSA provisions regarding the Florida property, alimony, and life and medical insurance.

## II.

Our review of a Family Part judge's findings is limited. We "afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021). The family court's findings are binding on appeal when "supported by adequate, substantial, credible evidence." Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "Reversal is warranted only if the findings were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We review de novo

questions of law, such as the interpretation and construction of a contract. Ibid.; see also Steele v. Steele, 467 N.J. Super. 414, 440 (App. Div. 2021)

Matrimonial settlement agreements are governed in part by basic contract principles. J.B. v. W.B., 215 N.J. 305, 326 (2013). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016). "[A] court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained." Ibid.

But "[t]he interpretation, application, and enforceability of divorce agreements are not governed solely by contract law." Steele, 467 N.J. Super. at 441. "'[T]he law grants particular leniency to agreements made in the domestic arena,' thus allowing 'judges greater discretion when interpreting such agreements.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992)). That "leniency is derived from the terms of the marital agreement and the nature of some post-judgment issues . . . that may require modification of the marital agreement over the years as events occur that were never contemplated by the parties." Quinn, 225 N.J. at 46. "We have long recognized that a family court is a court of equity, where judges employ a 'full range' of equitable doctrines to deal with

18

matrimonial controversies." Steele, 467 N.J. Super. at 441 (quoting Kazin v. Kazin, 81 N.J. 85, 94 (1979)). "Thus, [marital] settlement agreements . . . are specifically enforceable in equity." Ibid. (quoting Konzelman v. Konzelman, 158 N.J. 185, 194 (1999)).

"The doctrine of laches applies when there is neglect for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done." Zilberberg v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 468 N.J. Super. 504, 513 (App. Div. 2021). "[L]aches is the failure to assert a right within a reasonable time resulting in prejudice to the opposing side . . . . The key factors are the length of delay, reasons for delay, and change of position by either party during the delay." Clarke v. Clarke ex rel. Costine, 359 N.J. Super. 562, 570 (App. Div. 2003). "Whether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Fox v. Millman, 210 N.J. 401, 418 (2012) (quoting Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004)). Thus, we review the application of the doctrine of laches for an abuse of discretion. U.S. ex rel. U.S. Dep't of Agric. v. Scurry, 193 N.J. 492, 504 (2008).

Based on the PSA language, the parties expected plaintiff would pay defendant the $50,000 he owed her in additional equitable distribution within

thirty days of their execution of the PSA and that he would pay her the $179,000 he owed her for her share of the "net equity" in the New Jersey property in $17,900 annual payments for ten years. The parties recognized the possibility plaintiff could sell the New Jersey property within those ten years and provided in the PSA that, under those circumstances, defendant would receive "the balance of the net equity" and, if the New Jersey property sold for more than $600,000, she would "receive 25% of the net equity above $600,000."[4] The parties apparently did not anticipate what actually happened: plaintiff didn't pay a penny of those obligations within those time periods, and defendant waited nearly twenty years to move to enforce them. The PSA is silent as to what would happen under those circumstances. It does not, for example, provide for an award of interest, alter the parties' share in the property's net equity, or compel the sale of the New Jersey property in the event plaintiff failed to pay defendant.

Under those unanticipated circumstances and considering the language that was in the PSA, the Family Part judge ordered plaintiff to refinance the property and pay defendant "the $179,000 original equity payment plus 25% of

---

[4] The parties did not define "net equity" in the PSA but defined "net proceeds" as "the balance remaining from the sale after the payment of the mortgage, taxes, attorney fees, realtor commissions and other expenses related to the ownership and sale of the premises."

the net equity above $600,000 as defined in the PSA" or she would "direct that the house be listed promptly for sale." Defendant contends on appeal the judge should have awarded the additional net equity plus interest, even though the PSA said nothing about interest; plaintiff argues defendant wasn't even entitled to the additional net equity. But we perceive no abuse of discretion in the judge's equitable resolution.

We, however, take issue with the judge's calculation of the "net equity" owed to defendant. The judge erred in not using the most recent appraisal prepared by the appraisers she had chosen and ordered the parties to use. If the purpose of obtaining an appraisal was to right the wrong of plaintiff's failure to pay defendant, using an already out-of-date appraisal was an insufficient remedy. And while we find no fault in the judge's deduction of taxes and realtor fees given the PSA's definition of "net equity," we find no support in the record for the $17,000 in taxes and $42,500 in realtor fees found by the judge.

Accordingly, we vacate the portion of paragraph thirteen of the March 25, 2022 order setting $376,625 as the amount plaintiff must repay defendant and remand for a recalculation of that amount. We direct the trial court to order a new appraisal of the New Jersey property from Benchmark Appraisal, or another appraiser of the court's choosing if Benchmark Appraisal is not available, with

21

the cost of the appraisal to be shared equally by the parties. We also direct the trial court to allow the parties to file submissions regarding what amount, if any, in taxes and realtor commissions should be deducted and for the court to make that determination based on the evidence in the record.

With respect to the Florida property, defendant argues she should have been "reimbursed" for unpaid mortgage payments, repairs, and taxes that were deducted from the proceeds of its sale. The problem with that argument is that she is not entitled to that purported reimbursement under the express terms of the PSA. The PSA provided that on "the sale of the Florida property, the parties shall equally share the net proceeds of sale." The PSA, as we have noted, defined "net proceeds" as "the balance remaining from the sale after the payment of the mortgage, taxes, attorney fees, realtor commissions and other expenses related to the ownership and sale of the premises." Thus, the unpaid mortgage payments, repairs as "expenses related to the ownership" of the property, and taxes were appropriately deducted from the proceeds of the sale of the Florida property.

The judge erred in denying the aspect of defendant's motion regarding life insurance. The judge denied defendant's request for proof of life insurance, finding "[t]here is no alimony obligation" and "no basis to require life insurance

any longer." But in the PSA the parties did not tie plaintiff's obligation to maintain defendant as a beneficiary on a life insurance policy to his obligation to pay her alimony. In contrast, as expressly set forth in the PSA, the parties chose to require plaintiff to provide defendant with medical and dental insurance "for so long as [plaintiff] has an obligation to pay [defendant] alimony." The parties omitted that language from the PSA's life-insurance provision. See Konczyk v. Konczyk, 367 N.J. Super. 512, 514 (App. Div. 2004) (finding the defendant's obligation to maintain life insurance for the benefit of the plaintiff "was clearly and unequivocally designed to secure plaintiff's alimony obligation" when the judgment of divorce expressly provided the defendant's life-insurance obligation ended when his alimony obligation ended). Accordingly, we vacate paragraph seven of the March 25, 2022 order. Plaintiff argues due to defendant's delay in seeking relief, "obtaining life insurance at this time given [plaintiff's] medical condition would be impossible." Plaintiff's assumption may be correct, but it is just that – an assumption not supported by any evidence. We direct the court on remand to determine whether defendant's request for proof of life insurance is barred by the doctrine of laches, giving the parties an opportunity to address that issue.

In the statement of reasons attached to the March 25, 2022 order, the judge found defendant had "slept on her rights" but that "there [wa]s no prejudice to plaintiff as long as the court addresses enforcement equitably." The judge then ordered an equitable remedy regarding defendant's claim concerning the $179,000 plaintiff owed her and the New Jersey property. The judge did not expressly address in the statement of reasons defendant's claims for alimony and medical expenses but did not grant defendant's requested relief in the order.

In the August 12, 2022 transcript and order, which were made a part of the appellate record when we granted plaintiff's unopposed motion to expand the record to include them, the judge denied defendant's requests about alimony and medical expenses based on the doctrine of laches. The judge explained she was "not moved" by defendant's submissions regarding "her history of involvement with counselors and therapists" and found defendant's requests for relief "could have been submitted earlier." The judge also found plaintiff had been prejudiced by her delay, indicating he could not "go back and ask . . . if there's coverage."

Considering the first element of the doctrine of laches, whether there was a "failure to assert a right within a reasonable time," Clarke, 359 N.J. Super. at 570, we find no error in the judge's finding defendant had "slept on her rights."

Attempting to explain why she did not move to enforce the alimony provision of the PSA when plaintiff had stopped paying alimony in 2006 or the medical-insurance provision when her insurance had lapsed in 2004, defendant asserts she was "petrified" due to plaintiff's alleged "abuse" and "coercive behavior." But the records she submitted do not support a conclusion she was unable to move to enforce the PSA. Defendant did not submit an expert report. Instead, she included records about attending five sessions of a counselling program in 2010 and a seven-week program in 2013. Her therapist in that program described defendant's condition when she was discharged as "improved" and acknowledged defendant's intention "to go to court at some point to divide property" owned with her ex-husband but didn't counsel against it or find defendant incapable of doing so. On the record presented by defendant, we perceive no error in the judge's conclusion defendant had "slept on her rights" and could have moved to enforce the PSA "well before 2019."

The judge, however, made no findings of fact regarding the second prong of laches – defendant's delay caused prejudice to plaintiff – as to defendant's alimony claim, and the findings of fact she made regarding prejudice to plaintiff as to defendant's medical-insurance claim were based on conjecture, not evidence in the record. Accordingly, on remand we direct the trial court to

25

determine if plaintiff was prejudiced by defendant's delay in her alimony and medical-expense claims such that the second prong of the doctrine of laches was met, giving the parties an opportunity to address that issue. To enable plaintiff to determine possible medical insurance coverage, the trial court should direct defendant to produce copies of invoices related to her purportedly unpaid medical expenses.

To the extent we have not otherwise commented on them, we have duly considered the parties other arguments and conclude they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

In sum, we vacate paragraph seven of the March 25, 2022 order regarding defendant's life-insurance claim and the portion of paragraph thirteen of the order setting $376,625 as the amount plaintiff must repay defendant to satisfy defendant's equity interest in the New Jersey property. We remand for a recalculation of that amount, following the procedures we outlined above; a determination of whether the doctrine of laches bars defendant's life-insurance claim; and a determination of whether defendant's delay prejudiced plaintiff such that the prejudice prong of the doctrine of laches was met, barring defendant's alimony and medical-insurance claims. We otherwise affirm the March 25, 2022 order.

A-2674-21

Affirmed in part; vacated in part; and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION