**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1750-22

JERSEY CITY REDEVELOPMENT
AGENCY, a body corporate and
politic, and instrumentality of
the CITY OF JERSEY CITY,

     Plaintiff-Respondent,

v.

125 MONITOR STREET JC, LLC,

     Defendant-Appellant,

and

PEYCOM-COMP-001, a company
incorporated with limited liability
under the laws of the Grand-Duchy
of Luxembourg and acting as a
compartment of PEYOM LHR
SCOOPSA, 2MQ ASSOCIATES,
LLC, RONALD BLAKNEY,
VILLA CAPRI OF JERSEY CITY,
INC., BERNARD H. SEIDMAN,
CLARKSON REALTY, LLC,
VENINO AND VENINO ESQS,
SCHUMANN HANLON, n/k/a
SCHUMANN HANLON
MARGULIES, LLC, STATE OF

NEW JERSEY, and CITY OF
JERSEY CITY,

     Defendants.

_____

125 MONITOR STREET JC, LLC,

     Plaintiff-Appellant,

v.

JERSEY CITY REDEVELOPMENT
AGENCY and GRAFFITI 125, LLC,

     Defendants-Respondents.

_____

Argued June 5, 2024 – Decided October 24, 2024

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law
Division, Hudson County, Docket Nos. L-4773-21 and
L-4786-21.

Anthony F. DellaPelle and Daniel R. Lavoie
(DRLavoieLaw, LLP) argued the cause for appellant
(McKirdy, Riskin, Olson & DellaPelle, PC, and JSD
Legal, LLC, attorneys; Anthony F. DellaPelle and
Daniel R. Lavoie, of counsel and on the briefs; Michael
Realbuto, on the briefs).

William W. Northgrave and Kevin P. McManimon
argued the cause for respondent Jersey City
Redevelopment Agency (McManimon, Scotland &
Baumann, LLC, attorneys; William W. Northgrave,

A-1750-22

Kevin P. McManimon, and Malcolm X. Thorpe, on the brief).

Paul V. Fernicola argued the cause for respondent Graffiti 125, LLC (Paul V. Fernicola & Associates, LLC, attorneys; Paul V. Fernicola, of counsel and on the brief; Robert E. Moore, on the brief).

Jonathan M. Houghton (Pacific Legal Foundation) argued the cause for amicus curiae Pacific Legal Foundation.

The opinion of the court was delivered by

GUMMER, J.A.D.

125 Monitor Street JC LLC (125 Monitor) appeals from a January 3, 2023 order of judgment authorizing the Jersey City Redevelopment Agency (JCRA) to exercise its power of eminent domain over property owned by 125 Monitor and denying 125 Monitor's action in lieu of prerogative writs. We affirm.

I.

The property at issue in these consolidated cases (the Property) is located at 125 Monitor Street in Jersey City and is designated as Block 17503, Lot 1 on the City's tax maps. The Property consists of 2.18 acres of land and contains a six-story industrial building that was built about 100 years ago and was not in use when the trial court entered its order. The Property is located within an area

3

designated for redevelopment known as the Morris Canal Redevelopment Area (the "Redevelopment Area").

On April 22, 1998, the City's Municipal Council adopted Resolution No. 98-262, which authorized the City's Planning Board to investigate the conditions of the Garfield Brownfield Study Area (Garfield Study Area) to determine if it qualified as an "area in need of redevelopment" as defined in N.J.S.A. 40A:12A-3, which is part of the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -49. On October 3 and October 10, 1998, the Planning Board published notice in The Jersey Journal that during its October 20, 1998 meeting, it would consider a "Study Report" to determine whether the Garfield Study Area qualified as an area in need of redevelopment. Notice of the hearing was sent by certified mail to each property owner in the Garfield Study Area. At the conclusion of the hearing, the Planning Board voted to recommend that the Municipal Council designate the Garfield Study Area as an area in need of redevelopment. On December 9, 1998, the Municipal Council adopted Resolution No. 98-871, finding the Garfield Study Area met the criteria established in N.J.S.A. 40A:12A-5(a), (b), (d), and (e) and designating it as an area in need of redevelopment.

A-1750-22

At a February 23, 1999 meeting, the Planning Board recommended that the Municipal Council adopt the Morris Canal Redevelopment Plan (Redevelopment Plan), which encompassed all of the properties contained in the Garfield Study Area as well as other properties. On March 24, 1999, the Municipal Council enacted Ordinance No. 99-035, adopting the Redevelopment Plan.

In 2004, the Planning Board granted the application of JAR Holdings, LLC (JAR Holdings) for approval of its preliminary major site plan for the Property. JAR Holdings was the owner of the Property and an affiliate of Landmark Development, which had been designated as the developer of the Property. Under the plan, the six-story industrial building on the Property would be converted to a seven-story residential condominium. Between 2004 and 2015, the Property was not redeveloped.

On June 9, 2015, Graffiti 125, LLC (Graffiti) applied to the JCRA to be designated as the redeveloper of the Property. Graffiti's application included its proposal for the redevelopment of the Property, financial statements, as well as an overview of its business and professional team. Later that year, the JCRA adopted resolutions designating Graffiti as the redeveloper for the Property and authorizing the approval of a redevelopment agreement (RDA) between the

A-1750-22

JCRA and Graffiti. Graffiti had submitted a proposal that included the conversion of the six-story industrial building into "multi-family loft-style residential housing" containing approximately 152 units.

On January 27, 2016, the JCRA and Graffiti entered into the RDA, which was recorded in the Hudson County register of deeds on February 12, 2016. As part of the RDA, Graffiti agreed to "use its commercially reasonable efforts . . . to acquire all real property in the Project Premises for the purposes of implementing the Redevelopment Plan" and the JCRA agreed "to utilize the power of eminent domain which [it] possesses . . . for the purposes of assisting in the redevelopment proposed in the Redevelopment Plan" if Graffiti was "unable to acquire portions or all of the parcels within the Project Premises." The "Project Premises" was defined as the Property. Under the RDA, if it was unable to acquire title to any of the parcels within six months of the RDA's effective date, Graffiti had to provide within sixty days of the expiration of that period written notice to the JCRA requesting it to obtain the parcels through negotiation or by exercising its power of eminent domain. If Graffiti failed to acquire the parcels and failed to provide the required written notice, the JCRA was not obligated "to take any action to condemn any portions of the" Redevelopment Area and had "the right, but not the obligation, to convey such

portions . . . to any third party" and the RDA would be deemed "null and void and terminated with respect to those portions."

In a September 26, 2016 letter, Graffiti's general counsel advised the JCRA's executive director that Graffiti had been unable to acquire the Property and requested the JCRA to acquire it "through its powers of eminent domain." However, between 2016 and 2021, the JCRA did not take action to acquire the Property other than obtaining real estate appraisals of the Property in 2020 and 2021.

125 Monitor purchased the Property in March 2019 for $5.5 million. Before it purchased the Property, 125 Monitor knew the Property was located in a redevelopment area and that Graffiti had been designated as the redeveloper of the Property. On April 29, 2019, it entered into an Administrative Consent Order with the New Jersey Department of Environmental Protection, in which it "agreed to perform all remaining remediation associated with the discharged hazardous substances at the [Property] in accordance with the Administrative Requirements for the Remediation of Contaminated Sites, N.J.A.C. 7:26C, et seq., and the Technical Requirements for Site Remediation, N.J.A.C. 7:26E, et seq."

A-1750-22

Following its purchase of the Property, 125 Monitor became involved in litigation initiated by prior owners of the Property, who sought to set aside the sale of the Property to 125 Monitor. In an August 24, 2020 order and written opinion, the trial judge, Jeffrey R. Jablonski, declined to void the sale. 125 Monitor Holdings, LLC v. Botanical Realty Assocs., No. HUD-C-92-19 (Ch. Div. Aug. 24, 2020) (Botanical Realty litigation). We affirmed that order. 125 Monitor Holdings, LLC v. Botanical Realty Assocs., No. A-0310-20 (App. Div. Mar. 21, 2023).

Following the trial judge's decision in that case, Graffiti's counsel sent a letter dated October 2, 2020, to 125 Monitor, noting the JCRA had designated Graffiti as the redeveloper for the Property and offering "$6,500,000 for the purchase of the Property as-is, . . . [with] a full and complete full release from all liability for the costs to environmentally remediate the Property . . . ." (Emphasis in the original). Counsel also "advised that JCRA has already begun taking steps in preparation of filing a condemnation action to take title to the Property."

Counsel for 125 Monitor sent a letter dated October 14, 2020, to the JCRA, questioning whether the JCRA's designation of Graffiti as the

redeveloper of the Property had "expired as a matter of law"[1] and demanding the JCRA cease and desist from taking any steps to condemn because 125 Monitor intended to file an application to become the designated developer of the Property.

Steven Schwartz appeared with an attorney as a representative of 125 Monitor at the December 15, 2020 meeting of the JCRA Board of Commissioners (Board). The attorney advised the Board that the process to complete environmental remediation plans regarding the Property had begun and Schwartz wanted the opportunity to submit a redeveloper application regarding the Property.

That day, the Board passed a resolution finding the JCRA's acquisition of the Property was necessary to further the goal of the Redevelopment Plan and an appraisal had established $5,760,000 as the fair market value of the Property. In the resolution, the Board accepted that valuation and authorized the JCRA to purchase the Property for that amount and to institute condemnation proceedings if it was unable to acquire the Property through "amicable negotiations."

---

[1] In fact, the RDA had not expired. The automatic lapse provision of the RDA did not go into effect because Graffiti gave timely written notice to the JCRA that it had not been able to acquire the Property and requested the JCRA to obtain the Property through negotiation or by exercising its power of eminent domain.

A-1750-22

On January 8, 2021, counsel for the JCRA sent a letter to 125 Monitor with a copy of the December 2020 appraisal, which set a fair market value of $5,760,000 for the Property as of December 4, 2020.

The JCRA and Graffiti entered into a First Amendment to the RDA, dated September 23, 2021, in which, among other things, they acknowledged Graffiti had provided the required written notice of its inability to acquire the Property, they waived "[a]ll prior defaults" that had occurred under the RDA, "the current Property owner(s) have refused to remediate the environmental contamination on the Property and have refused to allow access to the Property," and "the New Jersey Department of Environmental Protection commenced litigation to compel [the] owner of the Property to remediate the contamination of the Property."

On September 20, 2021, the appraiser issued an appraisal with a September 1, 2021 effective date, finding a fair market value of the Property of $2,860,000. Based on an April 2021 report from an environmental consultant, the appraiser apparently subtracted the estimated cost of the removal of asbestos and other hazardous material from the Property from the $5,760,000 fair market value set forth in its December 4, 2020 appraisal. On September 21, 2021, the Board adopted a resolution accepting that valuation and authorizing JCRA to

purchase the Property for that amount and to institute condemnation proceedings if it could not acquire the Property through amicable negotiations.

In a September 28, 2021 letter to 125 Monitor's counsel, the JCRA's counsel enclosed a copy of the September 20, 2021 appraisal report and the April 2021 report from the environmental consultant and advised, "the Agency has determined to acquire the Property for the public purpose of redevelopment" with an "estimated just compensation for the Property to be acquired" of $2,860,000. Counsel indicated that if the JCRA did not receive a response to the offer within fourteen days, it would assume an agreement could not be reached and would commence condemnation proceedings.

In an October 15, 2021 letter, 125 Monitor asked to meet with the JCRA "in furtherance of its obligation to participate in bona fide negotiations pursuant to N.J.S.A. 20:3-6." On November 10, 2021, 125 Monitor sent to the JCRA what it described as an "application to become the designated redeveloper for the [P]roperty" along with a $10,000 check for the application fee. That application included a "conceptual plan for the development" of the Property that included the construction of 759 residential units even though the maximum density permitted on the Property pursuant to the Redevelopment Plan was 180 units. On November 17, 2021, the JCRA's counsel returned the application and

11

check, stating the JCRA would not consider 125 Monitor's application because of its RDA agreement with Graffiti.

On November 23, 2021, representatives and counsel of 125 Monitor and the JCRA, including the JCRA's executive director and deputy director, met in accordance with 125 Monitor's request. Counsel for 125 Monitor stated the JCRA's offer was "not acceptable" and asked "what the agenc[y's] plans are moving forward." The JCRA's counsel responded, "if we can't reach a settlement, we would probably move pretty quickly to file the condemnation action." Schwartz on behalf of 125 Monitor expressed an interest in redeveloping the Property or in somehow partnering with Graffiti to redevelop it. The JCRA's executive director pointed out that 125 Monitor already had had an opportunity to reach out to Graffiti but had not done so, Graffiti had reached out to 125 Monitor multiple times, and 125 Monitor had not responded. Counsel for 125 Monitor acknowledged the JCRA's representatives had "indicated to us that time is of the essence" and that "[m]aybe the next move for us is to approach [Graffiti]." He also acknowledged that "what [125 Monitor] wanted is not available from the JCRA and that is the right to develop the property themselves." The meeting concluded without a counteroffer from 125 Monitor to the JCRA's offer. On December 9, 2021, 125 Monitor presented a

counteroffer of $59,925,000, which was not supported by any appraisal and was more than ten times the price 125 Monitor had paid when it purchased the Property less than three years before. The JCRA rejected that counteroffer.

On December 10, 2021, the JCRA filed an application for an order to show cause and a complaint in which, pursuant to the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 to -50, it sought to acquire the Property by condemnation for public use. The court entered the order to show cause on December 13, 2021, scheduling a hearing for February 18, 2022. On the same day, 125 Monitor filed an action in lieu of prerogative writs and seeking various declarations concerning the Property and the JCRA's efforts to acquire it and redevelop it. The court subsequently consolidated the two cases and scheduled a hearing, allowing the parties to conduct discovery in the interim.

After hearing argument, Judge Jablonski, the same judge who had presided over the Botanical Realty litigation, entered on January 3, 2023, an order for judgment, granting the JCRA's application, denying the relief sought by 125 Monitor, and appointing commissioners to fix the compensation to be paid for the Property. In a comprehensive, written opinion, the judge found the JCRA was authorized to exercise its eminent-domain power as to the Property and had not acted arbitrarily, capriciously or unreasonably "in its varied dealings

with 125 Monitor." The judge rejected as meritless 125 Monitor's arguments that the study area was not validly designated as an area in need of improvement, an updated determination of blight should be made due to new facts or law, the JCRA had not acted in good faith, the taking was not reasonably necessary for the redevelopment effort, and the JCRA had acted arbitrarily, capriciously, and unreasonably with respect to 125 Monitor's purported redeveloper application.

125 Monitor filed this appeal, repeating many of the arguments it made in the trial court, including arguments challenging the JCRA's reliance on the 1998 area-in-need-of-redevelopment designation and the reasonable necessity of the taking of the Property. We agree with Judge Jablonski that those arguments are meritless and affirm substantially for the reasons set forth in his written opinion. We add the following comments to address 125 Monitor's argument Judge Jablonski failed to address some of its arguments and causes of actions and that "equity, justice, and public policy require a reversal."

125 Monitor contends the trial court failed to address fully its causes of action, particularly those based on 125 Monitor's assertion the JCRA failed "to turn square corners." In fact, Judge Jablonski devoted pages of his opinion to an analysis of that argument and concluded, "[t]here is no evidence provided that the JCRA in any way engaged in bad faith." We agree. As Judge Jablonski

14

found, the JCRA "amply demonstrated that it satisfied the statutory requirement to engage in bona fide negotiations." The JCRA made a written offer to 125 Monitor that was supported by appraisal and environmental reports. Its representatives, including its executive director, deputy director, and counsel, met with 125 Monitor's representatives at 125 Monitor's request. Its representatives at that meeting clearly articulated the JCRA's intention to proceed with the condemnation action if the parties could not reach an agreement and made clear its position regarding 125 Monitor's interest in redeveloping the Property. 125 Monitor's response was to issue an unsupported $59,925,000 counteroffer, which was more than ten times 125 Monitor's recent purchase price. That record does not bespeak of bad faith or a failure to turn square corners on the part of the JCRA.

What 125 Monitor really seems to take issue with is the JCRA's rejection of its "application" to be the redeveloper of the Property – an application proposing the construction of over four times the number of residential units allowed under the maximum density permitted on the Property pursuant to the Redevelopment Plan. The JCRA reasonably rejected that "application" because it already had entered into the RDA with Graffiti and did not deprive 125 Monitor of any fundamental fairness in doing so. 125 Monitor has not

demonstrated anything in the law or on this record that required the JCRA to unilaterally terminate its agreement with Graffiti and appoint 125 Monitor as the redeveloper. Ownership did not give 125 Monitor the right to be appointed the redeveloper. "A property holder is entitled to just compensation, not a windfall." Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013).

125 Monitor faults the trial court for not addressing its laches argument. The equitable doctrine of laches may apply when a party asserts rights (1) after an unexplained and unexcused delay that is unreasonable under the circumstances; and (2) when that delay caused unfair prejudice to the other party. Nw. Covenant Med. Ctr. v. Fishman, 167 N.J. 123, 140 (2001); see also United States v. Scurry, 193 N.J. 492, 503 (2008) ("The doctrine of laches 'is invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party.'" (quoting Knorr v. Smeal, 178 N.J. 169, 180-81 (2003))); Clarke v. Clarke ex rel. Costine, 359 N.J. Super. 562, 570 (App. Div. 2003) ("[L]aches is the failure to assert a right within a reasonable time resulting in prejudice to the opposing side"). The record is devoid of any evidence that any delay by the JCRA prejudiced 125 Monitor. When it purchased the Property in 2019, 125 Monitor knew the Property was located in a redevelopment area and

16

A-1750-22

that Graffiti had been designated as the redeveloper of the Property. On this record, neither laches nor any other equitable doctrine supports the reversal of the January 3, 2023 order of judgment.

To the extent we do not address any of 125 Monitor's remaining arguments, including its blanket assertion the LRHL is "unconstitutionally vague on its face," it is because we find insufficient merit in them to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1750-22